Edward STEWART, Appellant,

v.

SECRETARY OF HEALTH, EDUCA-TION AND WELFARE OF the UNITED STATES.

No. 82–5655.

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit Rule 12(6) July 15, 1983.

Decided Aug. 10, 1983.

See also D.C., 508 F.Supp. 345.

Alan L. Schwalbe, Richard E. Yaskin, on brief, Mark S. Jacobs, P.A., Voorhees, N.J., for appellant.

W. Hunt Dumont, U.S. Atty., Jerome B. Simandle, Asst. U.S. Atty., on brief, Trenton, N.J., for appellee.

Before SEITZ, Chief Judge, SLOVITER, Circuit Judge, and LORD,* District Judge.

---

* Hon. Joseph S. Lord, III, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

## OPINION OF THE COURT

JOSEPH S. LORD, III, District Judge.

Plaintiff-Appellant, Edward Stewart, initiated this action under 42 U.S.C. § 405(g) (1974) for review of a final determination by the Secretary of Health and Human Services. The Secretary, initially and on reconsideration, denied Stewart's application for disability benefits. A hearing was held before an Administrative Law Judge on January 14, 1980. The ALJ issued a written decision on February 5, 1980 finding the appellant was not disabled as of September 30, 1978, his last day of eligibility. The decision of the ALJ became the final order of the Secretary and was approved by the Appeals Council on March 13, 1980.

Stewart appealed this decision to the United States District Court for the District of New Jersey. The court determined that the Secretary failed to establish that alternative substantial gainful employment was available to Stewart and on February 27, 1981 the case was remanded for further proceedings. *Stewart v. Harris,* 508 F.Supp. 345, 349 (D.N.J.1981).

A second hearing by the ALJ was conducted on August 10, 1981. The ALJ issued a decision on October 19, 1981 recommending that Stewart be found not disabled. This decision was adopted by the Appeals Council and became the final order of the Secretary on December 23, 1981.

Stewart again appealed to the district court. The district court issued an unpublished opinion and order on September 21, 1982 that affirmed the denial of benefits. Stewart then filed a timely notice of appeal to this court.

## FACTS

The records of the hearings disclose the following facts. Stewart was injured in an accident at work in July, 1977. He continued to work until August of that year. He was thirty-two years old at the time, and all of his work experience involved heavy construction work.

In August 1977, he was admitted to Elmer Hospital for marked pain in his back. The diagnosis was contusion of the lumbosacral area and contusion of the base of the left lung. In September, Stewart was discharged on an out-patient basis.

Stewart's claim for disability was based primarily on his back injury and consequent pain. Conflicting medical evidence was presented on the severity of the injury and the pain. Stewart's treating physician, Dr. Otto Boysen, stated in a note dated March 2, 1979 that the claimant was "totally disabled due to lumbosacral strain." (Transcript 116). In a medical report from August 1979 Boysen detailed his treatment of Stewart's injury since 1977 and reached the same conclusion. (Tr. 128–29).

Dr. Thomas Obade examined Stewart on behalf of the Secretary on May 18, 1979. His examination revealed that Stewart had twenty-five percent of the normal range of motion in his back with a mild amount of spasm, that his hips moved well without pain, and that Stewart's legs showed no evidence of atrophy. X-rays of the lumbosacral spine revealed a minimum compression factor of L–1. Obade also stated that Stewart suffered a chronic lumbosacral strain. He concluded that Stewart was capable of performing sedentary work. (Tr. 85–88).

Stewart testified that he took three or four percodan tablets a day as well as valium (Tr. 39–40), and that if he sat too long he would be in pain. (Tr. 47, 180). Stewart explained that the pain medications he used made him feel "drugged" and did not provide sustained relief from the pain. (Tr. 185–86). The medications also made it difficult for him to concentrate and impaired his memory. (Tr. 186). In addition to the medication, Stewart uses a TENS unit for relief from pain. (Tr. 179).

At the second hearing, held on August 10, 1981, Leonard Pitts, a vocational expert, testified concerning Stewart's previous work experience and his potential for future employment. Pitts testified in response to a variety of hypotheticals posed by the ALJ and by Stewart's attorney. Initially, he identified a variety of jobs that a

person of Stewart's capabilities could successfully perform. When asked specifically about the effect of the medications Stewart took on his ability to perform the jobs in question, Pitts stated:

If the drug would have an effect on his ability to what I call, to receive instructions, to do calculations, to maintain adequate interpersonal relationships on the ability to reason, it would affect an aspect of the job. It would affect what I call the mental aspect of a job that's required. If the drugs would have any effect on his ability to—that would affect his coordination, his ability to lift, to push, to pull, to carry, to reach, to handle, to finger, to feel, to talk, to see, it would affect his ability to function properly in that job.

(Tr. 192).

At the same hearing, the ALJ received a report from Dr. Gregory Maslow. He examined Stewart on September 24, 1981 on behalf of the Secretary. While his description of the physical examination is consistent with the diagnosis of lower back pain,[1] his conclusion was that Stewart was not disabled. He stated:

My impression after examining this man is that he is severely hyper-reacting and *I do not have the most recent myelographic reports but I sincerely doubt that he has ruptured disc* and he appears not to be truthfully disabled in any way on the basis of today's exam. (Emphasis added).

(Tr. 205).

On October 29, 1982, after final disposition of this case by the district court, Stewart's attorney received a copy of an April 1982 letter by Dr. Frederick Murtagh to Drs. Boysen and Brown. In regard to

1. The report reads:
    Examination today in the examination room shows a man who moves very slowly, who demands that the young woman accompanying him take off his shoes for him and who will not stand erect. He holds himself in a crouched posture and complains of burning when the thoracic spine is palpated and percussed. In the low lumbar areas he winces severely when he is percussed. He does not allow any range of motion in the lumbar spine beyond a couple of degrees in any di-

Stewart, the letter states "[h]e has the clinical picture of an individual with L–4 nerve root compression and his *myelogram confirms the presence of a disc herniation* at this level." (Emphasis added). (Appendix 19a). On December 20, 1982, Stewart's attorney received a copy of the myelogram report apparently referred to in Murtagh's letter. The report, dated February 12, 1980 states "myelographic findings consistent with disc herniation at the L–4, L–5 level on the left side." (App. 20a). This evidence was not presented to the ALJ or to the district court. It is offered here for the first time.

### ALJ Report

In his second opinion, dated October 19, 1981, the ALJ found that Stewart possessed residual functional capacity to perform sedentary work activity. He further found that Stewart possessed transferable work skills and concluded that Stewart was not disabled.

The ALJ rejected the testimony of Stewart's treating physician, Boysen, who repeatedly stated that Stewart was disabled. The ALJ concluded "Boysen's opinion is not adequately substantiated by findings from physical examination or clinical studies, appears largely based on claimant's subjective symptomatology, does not take into account the various levels of job activity available, and is adequately counterbalanced by the remainder of medical evidence of record." (Tr. 153). While he correctly noted that pain in and of itself can be a basis for disability, the ALJ did not credit Stewart's testimony regarding the pain he experienced. He wrote:

rections [sic]. He will not stand on either toes or heels saying that he gets "too much back pain." The straight leg raising test does not cause him leg pain but causes him to have severe reaction saying that he has terrible low back pain with that maneuver. Gentle internal external rotation of the hip without any elevation of the leg also causes him to have a severe grimacing and apparent terrible back pain. He complains that the entire left lower leg below the knee is hypesthetic. (Tr. 204).

The Administrative Law Judge also notes that the claimant indicated [sic] at the hearing that he had been in constant and severe pain and that he uses heavy amounts of dramatic pain relievers. However, the Administrative Law Judge is constrained to comment that he did not find claimant's testimony regarding his symptomatology and level of discomfort to be credible or persuasive. In point of fact, the Administrative Law Judge finds that claimant is prone to exaggeration of his symptomatology. This conclusion is based on a careful review of the medical record, which reveals an essential paucity of objective findings, as well as by claimant's appearance, demeanor, and testimony at the hearing.

(Tr. 154).

The ALJ summarized Stewart's testimony concerning his dependence on pain killing drugs. He apparently found it credible. (Tr. 150). He then considered the testimony of Pitts, the vocational expert. He noted "Pitts indicated that if claimant's drugs affected him as alleged, then he obviously could not perform the job duties described." (Tr. 151). Ultimately he concluded that the claimant could perform the jobs described by the vocational expert at the hearing. (Tr. 155). This conclusion can only have been reached if the ALJ rejected Stewart's testimony concerning the effects the drugs had on him, as conditionally confirmed by the Secretary's own vocational expert, Pitts. The ALJ made no explicit finding on this point.

## DISCUSSION

■ A reviewing court must accept findings of fact by the Secretary if those findings are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasoning mind might accept as adequate to support a conclusion. *Smith v. Califano,* 637 F.2d 968, 970 (3d Cir.1981); *Lewis v. Califano,* 616 F.2d 73, 76 (3d Cir. 1980). This standard is set so that the appellate court can perform its statutory function of judicial review and at the same time avoid undue interference in the administrative functions which are the province of the Secretary.

■ We require that an Administrative Law Judge do more than simply state ultimate factual conclusions. *Hargenrader v. Califano,* 575 F.2d 434 (3d Cir.1978). The ALJ must include subsidiary findings to support the ultimate findings. *Id.* at 438. Additionally, we require from the ALJ "not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir.1981). As noted in *Gober v. Matthews,* 574 F.2d 772 (3d Cir. 1978),

[U]nless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's "duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."

*Id.* at 776, *quoting Arnold v. Secretary of HEW,* 567 F.2d 258, 259 (4th Cir.1977).

■ In this instance the ALJ failed to provide any explanation for his implicit rejection of Stewart's testimony regarding the effects of the medication he took. Had he credited his testimony, the ALJ would have had to conclude, in view of the vocational expert's testimony, that Stewart's ability to perform light or sedentary work was doubtful. This in turn might well have led to the conclusion that the claimant was disabled. In view of the ALJ's complete failure to explain whether Stewart's testimony concerning the effects of his medication was not credited or simply ignored, and his failure to offer any justification for his action, we will remand the case to the district court with instructions to remand it to the ALJ for reconsideration and further findings.

Stewart has also argued that the Secretary should consider on remand the 1980 myelogram and the 1982 letter from Murtagh recommending surgery for disc removal. Under 42 U.S.C. § 405(b) (West Supp.1983) the court may "at any time or-

der additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding."

We note that Stewart last met the special earnings requirements of the Social Security Act on September 30, 1978. It is Stewart's condition at that time that is in question. Nevertheless, the evidence proffered by Stewart might be relevant in one of two ways. It may be that a diagnosis of a herniated disc in 1980 coupled with an examination of Stewart's medical history from 1978 to 1980 could allow a physician to draw conclusions about Stewart's condition in 1978. Alternatively, the diagnosis of a herniated disc in 1980 tends to support the opinion of Boysen. His opinion was rejected by the ALJ, in part because it was not substantiated by findings from physical examination or clinical studies. Similarly, the evidence supports Stewart's testimony concerning his level of discomfort. This testimony was offered in January of 1980 and again in August of 1981. It was rejected in part because of "an essential paucity of objective findings." (Tr. 154). The new evidence might also lead the ALJ to place less weight on the opinion of Maslow. We leave to the district court a determination of whether the evidence is material, either directly, as an independent basis for establishing Stewart's condition in 1978, or indirectly, as a factor to be considered in weighing the various opinions and testimony offered.

We also leave for the district court the determination of whether there was good cause shown for the failure to submit this evidence earlier. *See Torres v. Schweiker,* 682 F.2d 109, 113 (3d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 823, 74 L.Ed.2d 1020 (1983). If the district court finds there is good cause and that the evidence is material, then the district court should remand this case to the Secretary with instructions to consider the new evidence as well as for the purposes discussed above. The judgment of the district court will be vacated and the matter remanded for further proceedings consistent with this opinion.