Lawrence BROPHY, Plaintiff,

v.

William A. HALTER, Acting Commissioner of the Social Security Administration of the United States, Defendant.

No. CIV.A. 00–2499.

United States District Court,
E.D. Pennsylvania.

June 6, 2001.

Charles S. Silver, Silver and Sperling, Doylestown, PA, for plaintiff.

Rafael Melendez, William B. Reeser, Social Security Admin. Office of General counsel, Philadelphia, PA, for defendant.

*MEMORANDUM*

PADOVA, District Judge.

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for a period of disability and/or insurance benefits under the Social Security Act (the "Act"). The Court referred the parties' cross-motions for summary judgment to Chief United States Magistrate Judge James R. Melinson, who issued a Report and Recommendation that the Court deny Plaintiff's Motion and grant Defendant's Motion. Plaintiff filed timely objections to the Report and Recommendation. For the reasons stated below, the Court overrules in part and sustains in part Plaintiff's objections and remands this matter to the Commissioner for reconsideration and further findings.

## I. Background

The Report and Recommendation contains a recitation of the factual history in this action, and with the exception of brief introductory facts, the Court will not repeat it here. Plaintiff formerly worked as a truck driver. (Tr. at 40.) He completed eighth grade. (Tr. at 39.) He last worked in August 1995. (Tr. at 40.) Plaintiff has had three surgeries on his back since 1990. (Tr. at 149, 168, 171–73, 223.) Plaintiff alleges that he is disabled as defined by 20 C.F.R. § 404.1505(a). (Compl.¶ 11.)

## II. Standard of Review

■ A district court judge makes a de novo determination of those portions of a magistrate judge's report and recommendation to which objection is made. 28 U.S.C.A. § 636(b)(1)(C) (West 1993). The judge may accept, reject or modify, in whole or in part, the magistrate's findings or recommendations. *Id.*

■ In reviewing the Commissioner's decision, the district court must determine whether there is substantial evidence to support the Commissioner's decision.

*Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir.1999) (citing *Adorno v. Shalala,* 40 F.3d 43, 46 (3d Cir.1994)). The district court is bound by the findings of the administrative law judge ("ALJ") if they are supported by substantial evidence in the record. *Id.* (citing 42 U.S.C. § 405(g); *Doak v. Heckler,* 790 F.2d 26, 28 (3d Cir. 1986)). "Substantial evidence has been defined as 'more than a mere scintilla'. It means such relevant evidence as a reasonable mind might accept as adequate." *Id.* (citing *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir.1995) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). To establish disability under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Id.* (citing *Stunkard v. Secretary of Health and Human Services,* 841 F.2d 57, 59 (3d Cir.1988)); 42 U.S.C. § 423(d)(1)). A claimant is considered unable to engage in any substantial activity "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* (citing 42 U.S.C. § 423(d)(2)(A)).

### III. Discussion

Plaintiff objects to the Magistrate Judge's Report and Recommendation on six grounds. The Court will address each in turn.

#### A. *Plaintiff's Age Classification*

■ Plaintiff objects to the Magistrate Judge's classification of Plaintiff as a "younger person" pursuant to 20 C.F.R.

§ 404.1563(b). A "younger person" is a person "under age 50." 20 C.F.R. § 404.1563(c). Plaintiff acknowledges that he was forty-eight years old at the time of the hearing before the ALJ, but argues that because he was fifty-one years old on April 16, 2001, he properly is classified as a "person closely approaching advanced age." A "person closely approaching advanced age" is a person "age 50–54." 20 C.F.R. § 404.1563(d). That age category, combined with his status as a person of "limited education" and a person who is unskilled, Plaintiff argues, entitles him to a determination of disability. (Pl.Obj.¶ 1.)

The relevant age category is that which "applies ... during the period for which we must determine if you are disabled." 20 C.F.R. § 404.1563(b). Plaintiff's Application for Disability Insurance Benefits ("Application"), dated May 3, 1996, stated that he became unable to work because of his disabling condition on August 1, 1995, and that he was "still disabled." (Tr. at 114.) The period for which Plaintiff seeks a disability determination began on August 1, 1995, and extends indefinitely. Therefore, the relevant age category is determined by the period of August 1, 1995, extending indefinitely forward.

Plaintiff asks the Court to apply the regulation governing age categories to his present age of fifty-one years old. The Court's role, however, is to determine whether substantial evidence supported the ALJ's determinations, not to apply the law to the facts de novo. The ALJ found that Plaintiff, who was born on April 16, 1950, was "considered to be a 'younger individual' at all times relevant to this decision." (Tr. at 23.) The ALJ's decision is dated October 26, 1998. (Tr. at 19.) At that time, Plaintiff was forty-eight years old. Thus, substantial evidence in the record supports the ALJ's finding. Plaintiff cites no authority pursuant to which a

district court may make a de novo finding of the applicable age category. Under the applicable standard of review, the Court overrules Plaintiff's objection and adopts the Report and Recommendation with respect to Plaintiff's age classification.

### B. Expiration of Plaintiff's Insured Status

Plaintiff objects to the Magistrate Judge's determination that Plaintiff's insured status expired December 31, 1997, and asserts that the failure to consider "the reality of his present physical condition" denies him due process of law. (Pl. Obj.¶ 2.) The Report and Recommendation states without citation that Plaintiff's insured status expired on December 31, 1997, and further states that the Magistrate Judge limited his review to "determining whether substantial evidence supports the ALJ's finding that Brophy was not under a disability as of the date he was last insured." (Rep. & Rec. at 2 and n. 4.) As a result, the Magistrate Judge concluded that the vocational report Plaintiff submitted "is not relevant." (Rep. & Rec. at 2 n. 2.) The Magistrate Judge additionally pointed out that Plaintiff's medical expert James J. White D.O. ("Dr.White") performed his evaluation after the expiration date, and that his evaluation did not indicate that it relates back to the time Plaintiff was insured. (Tr. at 11.) The ALJ found that "[t]he claimant's earnings record establishes that he met the disability insured status requirements of the Act on his alleged disability onset date, and continued to meet them through December 31, 1997, his date last insured." (Tr. at 23, 31.)

Plaintiff cites no authority for his objection to the expiration date. Because the ALJ's determination was based upon evidence of record, and Plaintiff has made no demonstration that the evidence or the determination is erroneous, the Court overrules Plaintiff's objection and adopts the Report and Recommendation as to the expiration of Plaintiff's insured status.

### C. Finding that Plaintiff's Work on Automobiles Was Inconsistent With Disability

Plaintiff objects to the ALJ's finding and the Magistrate Judge's affirmation that Plaintiff's "having worked on his automobiles for four hours was inconsistent with disability." (Pl.Obj.¶ 3.) Plaintiff argues that this "sporadic activity inference was improper" because it was unsupported in the record by details about the alleged work on automobiles, and because Plaintiff submitted an affidavit stating that the work on his cars was a one-time event that incapacitated him for two days. Plaintiff argues that *Smith v. Califano*, 637 F.2d 968 (3d Cir.1981) instructs that an ALJ "errs in drawing an inference from sporadic activities to a lack of corroborating medical testimony." This case lacks medical testimony supporting an inference based upon sporadic activity, Plaintiff argues.

Plaintiff's objection relates to the following commentary by the ALJ:

> Interestingly, Dr. Przybylski alluded to the claimant's professed discomfort in the right shoulder and triceps which he said "continue to be brought on after working four to six hours on his automobiles." The claimant has alleged that he can do no work beyond cooking, doing the laundry, and shopping with help from his stepson to carry the packages. It is difficult to reconcile the claimant's ability to perform only light house chores with working on automobiles for four to six hours.

(Tr. at 29–30.) Plaintiff submitted an affidavit to the Appeals Council averring as follows:

> At page 5 of Judge Brian's decision, he notes that I experienced pain after

working on my automobile for four to six hours. Judge Brian never asked me about that incident, but had he I would have advised him that since the onset of my pain many years ago, I have only worked on my car for a four hour period *one time,* and that I was laid up with pain for two days thereafter.

(Tr. at 12–13 (emphasis in original).)

The record in this matter contains an Office Note of Gregory J. Przybylski, M.D. ("Dr.Przybylski") dated August 20, 1998, in which Dr. Przybylski notes that on that date he saw Plaintiff "for recurrent episodes of right shoulder and triceps pain." (Tr. at 265.) Dr. Przybylski stated that Plaintiff "continues to take two to three Percocet each evening and none during the day for some mild left shoulder and upper arm discomfort and recurrent episodes of right shoulder and triceps discomfort. They continue to be brought on after working four to six hours on his automobiles." (Tr. at 265.)

Dr. Przybylski's Office Note of August 20, 1998, constitutes evidence that a reasonable mind would find adequate to support the conclusion that Plaintiff worked on automobiles for four to six hours at a time with some frequency. Plaintiff's Affidavit contradicts this conclusion. Plaintiff submitted the Affidavit to the Appeals Council after the ALJ issued his decision. (Tr. at 11.) An Appeals Council Order of March 17, 2000, made the Affidavit part of the record. (Tr. at 9.) Where a claimant submits new and material evidence that relates to the period on or before the date of the ALJ's decision, the Appeals Council "shall evaluate the entire record including the new and material evidence" and "will then review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970. The Appeals Council in this case, after

considering Plaintiff's additional evidence, "concluded that neither the contentions [in Plaintiff's brief to the Appeals Council] nor the additional evidence provides a basis for changing the Administrative Law Judge's decision." (Tr. at 7.) Upon reviewing the record, this Court concludes that Dr. Przybylski's Office Note provides substantial evidence supporting the conclusion that Plaintiff was working on his automobiles for four to six hours at a time with some frequency. Therefore, the Court overrules Plaintiff's objection and adopts the Report and Recommendation with respect to Plaintiff's work on automobiles.

### D. Selective Consideration of Dr. Thanki's Conclusions

■ Plaintiff objects to the Report and Recommendation on the basis that the ALJ and the Magistrate Judge relied upon "selective portions of medical evidence" from Ashok S. Thanki, M.D. ("Dr. Thanki"). (Pl.Obj.¶ 4.) Specifically, Plaintiff argues that "Dr. Thanki's notation from 9/5/90–9/8/90 that Plaintiff 'had total relief of lower extremity pain' was considered, but his ultimate conclusion, five years later in 1995, that he is prone to have recurrent lumbar strain and episodes of increased pain in the back and legs, that his back would never be completely normal, and that he was bound to have chronic pain in the future ... was not." (*Id.*)

The only medical evidence that the ALJ expressly rejected was the medical assessment completed by Dr. White. (Tr. at 29.) The ALJ made no express commentary on the evidence generated by Dr. Thanki; however, the ALJ's review of the medical evidence included several references to Dr. Thanki's notations or opinion. The ALJ quoted Dr. Thanki's opinion in 1995 "that 'even though Mr. Brophy has improved, he cannot go back to doing heavy lifting and prolonged sitting' required in his job as a

truck driver." (Tr. at 24.) The ALJ also recited Dr. Thanki's impression, recorded in correspondence dated January 17, 1997, after seeing Plaintiff and reviewing test results, that Plaintiff had herniated cervical discs at C3–4, C5–6, and C6–7; multilevel cervical spondylosis, C3–4, C4–5, C5–6, and C6–7; left cervical radiculopathy; and neural foraminal stenosis, left C6–7. (Tr. at 25.)

The ALJ's determinations are consistent to a certain extent with, but do not reflect all of Dr. Thanki's opinions. The ALJ determined that Plaintiff was not capable of performing his past relevant work. (Tr. at 30.) The hypothetical that the ALJ posed to the vocational expert during the hearing included limitation of cervical range of motion. (Tr. at 71–72.) However, the hypothetical upon which the ALJ relied did not refer to the symptoms to which Plaintiff points in his objection, namely, that Plaintiff is prone to recurrent lumbar strain and episodes of increased pain in the back and legs, and that he "is bound to have some symptoms like chronic pain in the future." (Tr. at 185.) The ALJ did not expressly reject these opinions or explain what components of the medical evidence he accepted or rejected in crafting the hypothetical.

 An ALJ "is not free to employ her own expertise against that of a physician who presents competent medical evidence." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir.1999) (citing *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985)). "The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." *Id.* (citing *Stewart v. Secretary of H.E.W.*, 714 F.2d 287, 290 (3d cir.1983)). The ALJ must "do more than simply state ultimate factual conclusions .... the ALJ must include subsidiary findings to support the ultimate findings" and must pro-

vide " 'not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' " *Stewart*, 714 F.2d at 290.

In this case, the hypothetical suggests that the ALJ failed to credit Dr. Thanki's opinion that Plaintiff has recurrent pain in the back and legs and likely would have chronic pain in the future; however, the ALJ stated no reason for rejecting the opinion. In the absence of subsidiary findings explaining any rejection of Dr. Thanki's opinion, the Court sustains Plaintiff's objection to this aspect of the Report and Recommendation, that the Magistrate Judge and ALJ considered only selective portions of the medical evidence. The Court remands this matter to the Commissioner for reconsideration and further findings. *See Id.*

### E. No Consideration Given to Dr. Diamond's Findings

 Plaintiff objects to the Report and Recommendation on the basis that the ALJ gave "no consideration" to the findings of Nicholas Diamond, D.O. ("Dr.Diamond"), the physician hired by the state agency. (Pl.Obj.¶ 5.) The ALJ's Decision made no express commentary upon Dr. Diamond's opinion, but the Decision referred to Dr. Diamond's report of July 25, 1996. The review of medical evidence contained within the Decision specifically referred to Dr. Diamond's diagnosis that Plaintiff had failed low back syndrome, left lumbar lumbosacral radiculitis, chronic myofascial pain syndrome with chronic left trapezius myofascitis, and chronic pain syndrome. (Tr. at 24.) The ALJ's Decision did not recite Dr. Diamond's findings

as to restrictions upon Plaintiff's ability to do work and daily activities, namely:

> Patient is able to lift and carry occasionally less than 10 lbs; standing and walking less than two hours, sitting less than six; pushing and pulling limited in the lower extremities. The patient is unable to climb, balance, stoop, kneel, crouch or crawl. He is unlimited in his ability to reach, handle, dexterity, seeing and speaking. Environmental restrictions, patient should avoid heights, moving machines, vibration, temperature changes, wetness and humidity."

(Tr. at 211.) The hypothetical that the ALJ posed to the vocational expert during the hearing did not incorporate most of these restrictions. The hypothetical posited a person who could lift "not in excess of 20 pounds," (Tr. at 71), in contrast to the ten-pound limit found by Dr. Diamond. The hypothetical did not mention the time limits found by Dr. Diamond. The hypothetical did not include restrictions on pushing or pulling in the lower extremities or climbing, balancing, stooping, kneeling, crouching or crawling.

The hypothetical suggests that the ALJ failed to credit Dr. Diamond's opinion regarding restrictions upon Plaintiff's activity; however, the ALJ stated no reason for rejecting the opinion. In the absence of subsidiary findings explaining any rejection of Dr. Diamond's findings, the Court sustains Plaintiff's objection and remands this matter to the Commissioner for reconsideration and further findings. *See Id.*

### F. The Hypothetical

◼ Plaintiff objects to the Report and Recommendation on the basis that the ALJ's hypothetical was deficient in four respects: (1) it did not include or refer to the limitations imposed by Dr. Diamond; (2) it did not include or refer to symptoms of pain noted by Dr. Thanki in his report of 1995; (3) it did not include or refer to restrictions imposed by Dr. White; and (4) it did not include or refer to the findings of Dr. Przybylski in August 1998. (Pl. Obj.¶ 6.)

During the hearing of Plaintiff's Application, the ALJ posed two hypotheticals to the vocational expert. (Tr. at 70–72.) The first hypothetical posited a person 47 years old, with an eighth grade education, prior relevant work as a truck driver and a physical profile as set forth in the medical assessment form prepared by Dr. White.[1] Dr. White's Physical Capacities Evaluation, dated September 8, 1998, is presented in a form on which Dr. White circled or checked answers from multiple-choice responses to questions about physical capacity. Dr. White's evaluation indicated that Plaintiff can sit, stand and walk a total of one hour at a time. (Tr. at 267.) The evaluation indicated that, within an eight-hour day, Plaintiff can sit a total of two hours, and stand and walk a total of one hour. (*Id.*) The evaluation indicated that Plaintiff can occasionally lift one to ten pounds and can never lift eleven to twenty pounds, or twenty-one to fifty pounds, or fifty-one to one hundred pounds. (*Id.*) The evaluation indicated that Plaintiff can drive a car for up to thirty minutes, but not up to one hour, and not routinely, and that Plaintiff cannot drive a truck. (*Id.*) The evaluation indicated that Plaintiff can occasionally bend, squat, crawl, climb, reach and carry. (*Id.*) Under the rubric of "Any other restrictions which should be noted," Dr. White wrote, "Pt is unable to

---

**1.** The ALJ referred to the medical assessment of Dr. White as Exhibit 21F. (Tr. at 71.) The Physical Capacities Evaluation prepared by Dr. White is Exhibit 20F. (Tr. at 267.) Exhibit 21F is a letter to Dr. White from Clifford S. Strauss, D.O., F.A.C.C. regarding an exercise stress test performed on Plaintiff. (Tr. at 268.)

work a 6 hr day due to chronic pain [sic]." (*Id.*)

In response to the first hypothetical, the vocational expert opined that Plaintiff was not able to perform his prior relevant work as a truck driver and that he was not able to perform any other type of work. (Tr. at 71.)

The ALJ's second hypothetical posed the following:

Assuming the same information as far as his age, education, and as far as his prior relevant work background is concerned, assume that he can lift not in excess of 20 pounds, that he can sit with frequent changes of position, stand—and that he would be prohibited from extreme bending, twisting, and turning, and further assume that his left rotation is also somewhat diminished. Let me—well, the cervical range of motion is limited by pain predominantly in extension and somewhat in lateral bending. . . .

Extension meaning his, his movement of the head up and down, and somewhat in lateral bending, meaning side to side, and his left rotation is also somewhat diminished. Referring as I am to the information provided by Dr. P. in Exhibit 13 and—Exhibit 13. And in further elucidation on the rotation assume that rotation to the right is without serious difficulty, rotation to the left, typically he has egregious or more extreme rotation is limited. Assume that extension and the ability to overhead, downward is not limited, but movement of his head up would be limited.

(Tr. at 71–72.)

In response to the second hypothetical, the vocational expert opined that Plaintiff would not be able to perform his prior relevant work as a truck driver, but that "there would be some other work that would be consistent with that description . . . " (Tr. at 72.) The vocational expert testified that such work would be sedentary and unskilled. (*Id.*) As examples, the vocational expert testified that Plaintiff would be able to work as a dispatcher, a maintenance scheduler or a bench assembler. (*Id.*)

The ALJ's Decision cited the vocational expert's response to the second hypothetical, (Tr. at 30) and made no reference to the first hypothetical; therefore, the ALJ implicitly rejected the validity of the first hypothetical. The ALJ stated that he "rejects the medical assessment completed by Dr. White, who found the claimant unable to perform any work activity." The ALJ explained that "[t]he claimant met only one time with Dr. White before the doctor completed the medical assessment precluding all work activity (Exhibit 21F)." (Tr. at 29.) As stated above, Exhibit 21F is a letter from Clifford S. Strauss, D.O., F.A.C.C., to Dr. White regarding the results of an exercise stress test on Plaintiff. The letter makes no reference to the number of times Plaintiff saw Dr. White. Exhibit 20F, the Physical Capacities Evaluation of Dr. White, does not state how many times Dr. White saw Plaintiff. This Court has found no evidence in the record that Plaintiff met only one time with Dr. White.

The August 20, 1998, Office Note of Dr. Przybylski states that Plaintiff "recently changed his family practice location although resumed seeing Dr. White whom he had seen years ago." (Tr. at 265.) After the ALJ issued his Decision, Plaintiff submitted to the Appeals Council an Affidavit by Plaintiff and a letter written by Dr. White. (Tr. at 9, 11.) The Affidavit stated, inter alia:

At page 8 of Judge Brian's decision, he notes that I met only one time with Dr. White before the Doctor completed my medical assessment. This is inaccurate as I have been treating with Dr. White

for neck and back pain since 1989. Attached please find Dr. White's letter of December 16th, 1998 clarifying his treatment and his opinion regarding my disability.

(Tr. at 274.) The letter dated December 16, 1998, from Dr. White to "Mr. Solomon" stated: "I have treated Mr. Brophy since 1989 for neck and back pain. I left my practice that he was at in the fall of 1990. He recently began treatment with me again in July of 1998." (Tr. at 276.) This letter states Dr. White's opinion that Plaintiff "is completely and permanently disabled due to his conditions." (*Id.*) This letter does not clarify how many times Plaintiff saw Dr. White or the nature of their doctor-patient relationship. As the Magistrate Judge pointed out, Plaintiff's statement in his Affidavit that he had been "treating with Dr. White for neck and back pain since 1989" is misleading because it ignores the gap in treatment between 1990 and 1998. (Rep. & Rec. at 11–12.)

The Magistrate Judge noted that the "one page check-off form completed by Dr. White" lacks "objective medical evidence" supporting the conclusion that Plaintiff is unable to work a six-hour day. (Rep. & Rec. at 10.) The Magistrate Judge further noted that Dr. White's opinion contradicted the reports of Dr. Thanki and Dr. Przybylski, without identifying contradictions. For those reasons, the Magistrate Judge reasoned that Dr. White's opinion was not entitled to the enhanced weight normally given to the findings and opinions of treating physicians pursuant to 20 C.F.R. § 404.1527(d)(2), and concluded that the ALJ properly rejected it. (Tr. at 11.) The Magistrate Judge additionally noted that Dr. White's evaluation post-dated the expiration of Plaintiff's insured status and did not indicate that it relates back to the time Plaintiff was insured. (*Id.*)

The Magistrate Judge's analysis is compelling; however, even if rejection of Dr. White's opinion is proper, Plaintiff has pointed to other medical evidence in the record that is neither incorporated into the hypothetical nor expressly rejected by the ALJ. In posing the hypothetical to the vocational expert, the ALJ noted that he referred to information provided by Dr. Przybylski on June 5, 1998, in Exhibit 13. However, the record contained conflicting or additional medical evidence from Drs. Diamond and Thanki that the ALJ implicitly rejected without explanation in the Decision. Additionally, reports by Dr. Przybylski made after June 5, 1998, discussed development of new symptoms in Plaintiff's right shoulder and arm, and the hypothetical did not incorporate this information. (Tr. at 221–22, 265–66.) "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer v. Apfel,* 186 F.3d at 429 (citing *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir.1993)). "The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." *Id.* (citing *Stewart v. Secretary of H.E.W.,* 714 F.2d 287, 290 (3d Cir.1983)).

Two physicians, one hired by the state and one hired by the Plaintiff, opined that Plaintiff was restricted in the number of hours he could stand, walk and sit, yet the second hypothetical, based on Dr. Przybylski's opinion, posited a person who could "sit with frequent changes of position." Dr. Diamond opined that Plaintiff was limited to standing and walking less than two hours and sitting less than six hours (Tr. at 211.) Dr. White opined that Plaintiff can sit, stand and walk a total of one hour at a time, and that within an eight-hour day, he can sit a total of two hours, and stand and walk a total of one hour. (Tr. at

267.) The hypothetical rejects the precise outer time limits, and the ALJ did not explain why he rejected the evidence. Additionally, the hypothetical is inconsistent with Dr. Przybylski's statement on August 20, 1998, that if Plaintiff "sits up any length of time, the right symptoms will occur," referring to right shoulder and triceps discomfort. (Tr. at 265.)

The hypothetical implicitly resolved a conflict in the medical evidence as to how much weight Plaintiff could lift, yet the ALJ provided no explanation. The hypothetical, based on Dr. Przybylski's opinion of June 5, 1998, posited a person who could lift "not in excess of 20 pounds." Dr. Diamond, hired by the government, opined on July 28, 1996, that Plaintiff could "lift and carry occasionally less than 10 lbs." (Tr. at 211.) Plaintiff's expert Dr. White opined on September 8, 1998, that Plaintiff could occasionally lift up to ten pounds. (Tr. at 267.)

Other medical evidence in the record is not reflected in the second hypothetical, without explanation by the ALJ. The hypothetical does not reflect Dr. Diamond's opinion that Plaintiff was restricted in pushing and pulling in the lower extremities, and that he is unable to climb, balance, stoop, kneel, crouch or crawl. (Tr. at 211.) The hypothetical does not reflect certain of Dr. Thanki's opinions, that Plaintiff is subject to recurrent lumbar strain and episodes of increased pain in the back of the legs and that he is likely to have chronic pain in the future. (Tr. at 185.)

In the absence of explanation as to how the ALJ resolved conflicts in the evidence and rejected evidence of record, the Court is unable to determine that the hypothetical is supported by substantial evidence and is not the product of the ALJ's arbitrary rejection of evidence. Accordingly, the Court sustains Plaintiff's objection to the Report and Recommendation with respect to the hypothetical and remands this matter to the Commissioner for reconsideration and further findings.

## IV. Conclusion

Finding that the hypothetical and the ultimate determination of the ALJ failed to reflect significant evidence in the record and to explain the rejection of such evidence, the Court sustains in part and overrules in part Plaintiff's objections and remands this matter to the Commissioner for reconsideration and further findings. An appropriate Order follows.

### *ORDER*

**AND NOW,** this day of June, 2001, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 4), Defendant's Motion for Summary Judgment (Doc. No. 7), the Report and Recommendation of Chief United States Magistrate Judge James R. Melinson (Doc. No. 9), and Plaintiff's Objections to Report and Recommendation (Doc. No. 10), **IT IS HEREBY ORDERED** that the Court **SUSTAINS in part** and **OVERRULES in part** Plaintiff's objections. **IT IS FURTHER ORDERED** that this matter is remanded to the Commissioner for reconsideration and further findings consistent with the Memorandum.