**William M. STUNKARD**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES.**

**Appeal of William STUNKARD.**

**No. 87–3509.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6), Jan. 8, 1988.

Decided Feb. 29, 1988.

Lawrence R. Chaban, Yablonski, Costello and Leckie, Washington, Pa., for appellant.

J. Alan Johnson, U.S. Atty., Amy Reynolds Hay, Asst. U.S. Atty., W.D.Pa., Pittsburgh, Pa., Beverly Dennis, III, Chief Counsel, Region III, Charlotte Hardnett, Supervisory Asst. Pamela Darville, Asst. Regional Counsel, Dept. of Health and Human Services, Philadelphia, Pa., for appellee.

Before SEITZ, HUTCHINSON and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

William M. Stunkard appeals from the district court's order affirming a final deci-

sion of the Secretary of Health and Human Services (HHS) denying Stunkard's request for disability benefits under the Social Security Act, as amended, 42 U.S.C. § 405(g) (Supp. V 1981) (the "Act"). This court has jurisdiction pursuant to 28 U.S.C. § 1291 (1982).

## I.

William Stunkard had worked for over 25 years as a truck driver, when on November 12, 1983, he became unable to continue in that capacity because of a back injury sustained while on the job. On July 31, 1984, Stunkard applied for Disability Insurance Benefits under Title II of the Act, claiming that his back injury and associated pain had caused him to become disabled. After a hearing before an Administrative Law Judge ("ALJ"), Stunkard's claim was denied on the ground that his physical impairments, though serious enough to result in partial disability, were not sufficiently severe to prevent him from undertaking substantial gainful activity under the Act.[1]

The medical evidence produced during Stunkard's administrative hearing disclosed that he experienced both throbbing and shooting pain radiating down his back to the area of the groin and the left knee. Stunkard attempted to control the pain with prescribed pain medication and used prescribed medication to help him sleep. After two years of conservative, non-intrusive medical treatment failed to alleviate his back pain, Stunkard underwent surgery on January 16, 1984. Stunkard's post-operative recovery was "uneventful" and, after three weeks, he returned to his treating physician, Dr. Howard J. Senter, for continued treatment.[2]

Stunkard has been examined on a number of occasions since 1984. The most recent evaluations from Dr. Senter, both written in 1985, indicate that Stunkard improved somewhat after his surgery. These most recent reports show that Stunkard "has stabilized at an improved but partially disabled state," Tr. at 157, and has been given his doctor's permission to return to work. *Id.* Moreover, Dr. Senter completed a medical assessment form on May 28, 1985, on which he indicated that Stunkard could not lift and/or carry more than 25 pounds and could not stand and/or walk for more than three of the eight hours in a workday. He also indicated that Stunkard was able to sit no more than three hours during an eight hour workday and could only occasionally climb and balance. Dr. Senter also reported that Stunkard could not stoop, crouch, kneel or crawl, or operate moving machinery, and could not push or pull. Tr. at 158–59.

---

1. In evaluating disability, the Social Security Administration requires the ALJ to consider the following sequence:

   1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;
   2. An individual who does not have a "severe impairment" will not be found to be "disabled;"
   3. If an individual is suffering from an impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1, a finding of "disabled" will be made without consideration of "age, education, and work experience;"
   4. If an individual is capable of performing work he or she had done in the past, a finding of "not disabled" must be made;
   5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

   20 C.F.R. § 404.1520(e)–(f) (1987).
   The ALJ in the present case found that, under step "5" of this sequence, Stunkard retained the residual function capacity to perform "light work" as defined under the Act. Thus, our analysis centers around the ALJ's application of this step in the sequence.

2. The record also indicates that in October of 1984, Stunkard consulted Dr. Frank Heyl after complaining of chest pains. Dr. Heyl reported that the pains were of undetermined etiology and were not caused by any determinable cardiac-related abnormalities. In March of 1984, Stunkard again complained of chest pains and was hospitalized for evaluation of occasional chest discomfort with radiation to the back. While hospitalized, it was determined that Stunkard suffered from cardiomegaly, a condition characterized by enlargement of the heart due to a localized deposit of glycogen in the heart muscle. Although a number of cardiac abnormalities were discovered, Stunkard was released and instructed to stop smoking. Stunkard does not claim that his disability is heart-related.

In a decision dated July 31, 1985, the ALJ found that Stunkard had severe residuals from surgery for a herniated nucleus pulposus, but that he did not have an impairment or combination of impairments listed in, or medically equal to one listed in, 20 C.F.R. Reg. No. 4, Subpt. P, Appendix 1 (1987). He thus concluded that Stunkard was not *per se* disabled.

The ALJ also found that Stunkard's subjective complaints of pain were credible to the extent that they prevented him from undertaking strenuous activities, but that Stunkard had no nonexertional limitations as defined in 20 C.F.R. § 404.1545 (1987). *See* Tr. at 15. Further, the ALJ found that although Stunkard could not perform his past relevant work as a truck driver, he retained the residual functional capacity to perform the physical exertional requirements of work except that he could not lift more than 25 pounds or undertake work that required constant pushing or pulling movements. On this basis, the ALJ concluded that Stunkard could perform the full range of "light work" as defined in 20 C.F.R. § 1567 (1987). Because Stunkard was 52 years old and had a high school diploma at the time of the ALJ's decision, the ALJ applied Rules 202.14 and 202.15 of 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 2 (1987), and, on that basis, determined that Stunkard was not disabled under the criteria set forth in the Act. This decision was subsequently adopted by the Secretary.

The district court affirmed the Secretary's decision on the ground that the record contained substantial evidence supporting the Secretary's adoption of the ALJ's conclusion.

## II.

Our standard of review is whether there is substantial evidence in the record to support the Secretary's decision. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir.1986); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir.1985). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). It consists of more than a mere scintilla of evidence but less than a preponderance. *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir.1979).

By the terms of the Act, a claimant who wishes to qualify for Social Security disability benefits must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir.1987); 42 U.S.C. § 423(d)(1) (1982). A claimant may make such a showing in one of two ways: first, by introducing medical evidence that he is disabled *per se* because he suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1 (1987), *see Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed. 2d 66 (1983); *Kangas*, 823 F.2d at 777; or, second, if a claimant suffers from a less severe impairment, by demonstrating that he is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy...." *Campbell*, 461 U.S. at 461, 103 S.Ct. at 1954 (citing 42 U.S.C. § 423(d)(2)(A)).

In the present case, Stunkard does not assert that he suffers from any of the severe impairments listed in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1. Thus, Stunkard does not claim that he is disabled *per se*. He does, however, maintain that the second method of proving a disability is implicated in his case because he is unable to perform any kind of work in the national economy.

In seeking disability benefits under this second method, the claimant must demonstrate the existence of a medically determinable disability which precludes him from resuming his previous employment. *Id.* at 28. Once this has been accomplished, the burden shifts to the Secretary to demonstrate that, given the claimant's age, education, and work experience, the claimant is capable of performing substantial gainful activity in the national economy. *Kangas v. Bowen*, 823 F.2d at 777;

*Doak v. Heckler,* 790 F.2d at 28; *Rossi v. Califano,* 602 F.2d 55, 57 (3d Cir.1979).

In order to show that a claimant is in fact capable of undertaking jobs that exist in the national economy, the Secretary must prove that the claimant, although perhaps partially disabled, retains the residual function capacity to work on a "regular and continuing basis." *Kangas,* 823 F.2d at 777 (citing 20 C.F.R. Regulations No. 4, Subpt. P, § 404.1545(b) (1986)). In such a case, the Social Security regulations which require the Secretary to take into account both exertional and nonexertional physical impairments in measuring a claimant's disability.

Exertional impairments involve limitations on a claimant's ability to meet certain strength requirements of a job such as lifting or pushing and pulling. 20 C.F.R. § 404.1545(b). Nonexertional impairments, on the other hand, involve limitations such as postural and manipulative impairments that do not affect a claimant's physical strength but may nevertheless prevent a claimant from engaging in gainful employment. 20 C.F.R. § 404.1545(d).

Where a claimant suffers solely from exertional limitations, the Secretary determines disability by first assessing the claimant's residual function capacity to do work of some kind (e.g., "sedentary," "light," or "medium" work) and then applying the Medical–Vocational Guidelines contained in 20 C.F.R. Regulations No. 4, Subpt. P, App. 2 (1987) (the "Guidelines"). The Guidelines "consist of a matrix of four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Heckler v. Campbell,* 461 U.S. at 461–462, 103 S.Ct. at 1954–1955. If a claimant's qualifications correspond to the job requirements listed in the Guidelines, the Guidelines require that the claimant be considered not disabled.

However, where *both* exertional and nonexertional limitations are present, the regulations require the Secretary to take both into account in determining whether a claimant is disabled. *See Caffee v. Schweiker,* 752 F.2d 63, 67 n. 5 (3d Cir. 1985); *Burnam v. Schweiker,* 682 F.2d 456 (3d Cir.1982). The Guidelines state that:

[W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience *provide a framework for consideration of how much the individual's work capacity is further diminished in terms of types of jobs that would be contraindicated by the nonexertional limitations*

. . . .

20 C.F.R. Pt. 404, Subpt. P. App. 2, Table No. 2, § 200.00(e)(2) (emphasis added). Section 200.00(e)(2) of the Guidelines makes clear that nonexertional limitations should be considered when the Guidelines, whose application is based on exertional limitations, are being used as a framework to evaluate a claimant's entitlement to disability benefits.

On appeal to this court, Stunkard claims that the district court erred in granting summary judgment in the Secretary's favor for two reasons. First, Stunkard argues that the ALJ erred in finding that Stunkard could perform a full range of "light work" as defined under 20 C.F.R. § 404.1567(b) (1987). Second, he argues that the ALJ erred by not recognizing his nonexertional limitations as set forth in 20 C.F.R. § 404.1545.

### A.

We turn first to Stunkard's claim that the ALJ erred in finding that Stunkard was able to perform a full range of light work under 20 C.F.R. § 404.1567(b). That section defines light work as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a *good deal of walk-*

*ing or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.* To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities

. . . .

*Id.* (emphasis added).

■ The record does not support the ALJ's finding that Stunkard can perform light work as defined in the regulations. Despite the fact that Dr. Senter's medical assessment of May 1985 indicated that Stunkard was only able to sit for three hours of an eight hour day, only able to stand and/or walk for three hours of an eight hour day, and could not push and pull, the ALJ, contrary to the regulations' definition just quoted, found that Stunkard could perform a "full range of light work." Tr. at 15. On the basis of our independent review of the medical evidence adduced during Stunkard's hearing, we are satisfied that Stunkard was *unable* to perform "substantially all of [the] activities" required under the regulations' definition for performing light work. We thus conclude that the ALJ erred in his finding. The record is barren of any medical testimony to suggest that Stunkard could perform activities consistent with the definition of light work as set forth in the regulations, and therefore the ALJ's finding to that effect is not supported by substantial evidence. Indeed, the evidence of record is to the contrary.

Our conclusion is buttressed by the reports of Dr. Senter. While Dr. Senter did indicate that he had given Stunkard permission to "return to work" in a letter written in February 1985, that letter does not identify Stunkard's precise physical condition at that time, nor does it indicate what type of work Dr. Senter believed Stunkard was capable of performing at that time. Moreover, Dr. Senter's subsequent medical assessment in May 1985, with its step-by-step evaluation of Stunkard's capabilities, provides more detailed and more recent evidence than his earlier letter, and reveals that Stunkard was not capable of performing light work.

Although it is true, as the Secretary points out, that Stunkard in his original application for disability stated that he could, at that time, perform housework that included mowing the lawn, running a sweeper, painting, and cleaning, *see* Tr. at 83, Stunkard later testified that he had been forced to move to an apartment in April of 1985 because he had become unable to "keep up the house," or do "repair work" and "yard work." Tr. at 32. Stunkard's testimony that he was no longer able to engage in the kind of work in 1985 that he had been able to perform in 1984 is supported by Dr. Senter's report of May 28, 1985, which characterizes Stunkard as partially disabled and unable to push or pull.

**B.**

Stunkard also argues that the ALJ erred in concluding that Stunkard had no nonexertional limitations. As a result, the ALJ failed to take into account his nonexertional limitations in determining that he was not disabled. Stunkard points specifically to his postural limitations as proof that he suffered from nonexertional limitations. Stunkard claims these nonexertional limitations should have been considered in conjunction with the ALJ's application of the Medical–Vocational Guidelines (the "Guidelines") contained in 20 C.F.R. Regulations No. 4, Subpt. P., Appendix 2, prior to the ALJ's reaching his conclusion, on the basis of Rules 202.14 and 202.15, Table No. 2 of those guidelines, that Stunkard was not disabled. *See* 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 2, § 200.00(e). As noted earlier, the ALJ, having found no "nonexertional limitations," did not evaluate Stunkard's condition with these impairments in mind.

■ The flaw in the ALJ's decision stems from the fact that he failed to give proper consideration to evidence of Stunkard's nonexertional limitations. The evidence of record showed that these limitations included the inability to bend, stoop, crouch or kneel, as set forth in Dr. Senter's medical assessment of May 1985. As Stunkard suggests in his brief, these limitations should properly have been considered "postural" and, as such, should have been included in the ALJ's findings as nonexertional limitations as defined in 20 C.F.R. § 404.1545(d). Thus, we conclude that the

ALJ's finding that Stunkard had no nonexertional limitations was not supported by substantial evidence.

The existence of nonexertional limitations does not, without more, mean that Stunkard is disabled under the Act. If, even with these nonexertional limitations added to the calculus, there is substantial evidence to support a finding that Stunkard is capable of performing some type of work in the national economy, then the ALJ might still have concluded that Stunkard was not disabled. *See* 20 C.F.R. No. 4, Subpt. P., App. 2 § 200.00(e)(2). However, the ALJ at no time engaged in such an analysis.

The ALJ should not only have considered Stunkard's physical limitations, but should thereafter have considered "how much [Stunkard's] work capacity [was] further diminished in terms of any types of jobs that would be contraindicated by the *nonexertional* limitations." *Id.* (Emphasis added.) According to the regulations, the Guidelines "are not to be mechanically applied where the claimant suffers from ... nonexertional impairments." *Welch v. Heckler,* 808 F.2d 264, 270 (3d Cir.1986). Where nonexertional impairments are present, "full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations." 20 C.F.R. Subpt. P, App. 2. Because the ALJ erroneously found that Stunkard was not restricted by nonexertional limitations, he did not find it necessary to decide whether Stunkard's nonexertional limitations might in fact diminish his capacity to engage in substantial gainful activity.

### C.

To summarize, the proceedings below were flawed in two important respects. First, the ALJ found that Stunkard was capable of engaging in a wide range of light work as defined under the Act, despite the fact that he was unable to perform substantially all of the activities required by the regulations to qualify for such work. No substantial evidence appears in the record to support such a conclusion.

Second, the ALJ found that Stunkard had no nonexertional limitations. We find that no substantial evidence appears in the record to support such a conclusion. Rather the evidence shows that Stunkard suffers from a number of nonexertional postural limitations. These limitations should have been, but were not, expressly considered by the ALJ to determine whether they diminished Stunkard's work capacity prior to the rendering of a final decision.

We will therefore vacate the order of the district court with a direction that the case be remanded to the Secretary for further proceedings consistent with this opinion.