**Clarence WHITTINGTON**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services.**

**Civ. A. No. 88–1871.**

United States District Court, E.D. Pennsylvania.

Nov. 28, 1988.

---

David L. Hill, Community Legal Services, Inc., Philadelphia, Pa., for plaintiff.

Serena H. Dobson, Asst. U.S. Atty., for defendant.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

### I. *Procedural History*

Plaintiff, Clarence Whittington, brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the decision of the Secretary of Health and Human Services ("the Secretary") denying Plaintiff's claims for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. § 401 *et seq.* and § 1381 *et seq.* (1983). Plaintiff filed his application on December 13, 1985. In it he claimed that he had become disabled as of April 30, 1985 due to a back condition. His application was denied. A hearing was then held before an Administrative Law Judge ("ALJ"), who on October 26, 1986 also denied Plaintiff's claim. Upon review, the Appeals Council remanded the case and instructed the ALJ to obtain additional evidence from a vocational expert. After reviewing answers to the written interrogatories submitted by that expert, the ALJ issued a second opinion on August 18, 1987, again denying Plaintiff's claims. A subsequent appeal was denied, thus finalizing the Secretary's decision.

### II. *Statement of Facts*

Plaintiff is 44 years old, was educated through the eleventh grade, and is a garment cutter by trade. In December 1974, Plaintiff underwent a laminectomy. After surgery, he continued working as a garment cutter until he reinjured his back on April 21, 1985 while pushing a friend's car. Nine days later, Plaintiff was admitted to the Parkview Division of Metropolitan Hospital. His physician, J. Eshleman, D.O., treated Plaintiff with medication, osteopathic manipulative therapy, and a TENS

unit. Dr. Eshleman found that the severe pain initially experienced by Plaintiff was gradually alleviated with aggressive treatment. Plaintiff was discharged from the hospital on May 5, 1985. Dr. Eshleman later submitted separate reports to the Workmen's Compensation Board ("the Board") on June 3, 1985, December 13, 1985 and July 24, 1986 in which he opined that Plaintiff was incapable of performing any work due to severe and disabling lower back pain. In his December 13th report, Dr. Eshleman, having last treated Plaintiff on October 25, 1985, stated that Plaintiff's case before the Board should be reopened, as he suffered from:

> [i]ncreasingly severe sciatic and lumbo-sacral pain, reduced range of motion, spasm, severely reduced ability to walk even short distances at times, reduced ability to stand or sit for extended periods of time, increasing weakness in both lower extremities

> .     .     .     .     .

> weakness left ankle, pain sole of left foot, pain sciatic area with radiculopathy, numbness certain toes of both feet, inability to control bowels at times (anal sphincter) ... 25% loss of sphincter tone, 60% loss of use of both legs.

R. 164.

In January 1986, Plaintiff traveled to Episcopal Hospital for an Orthopedic Evaluation by M. Jaffari, M.D. Dr. Jaffari noted in his report:

> Physical examination reveals an alert, oriented man in no distress. He walked into my office with a normal gait and without any deviation. He was able to undress and get on a high examining table without any problem. He was able to walk on his toes, heels, squat down and come back to an erect position without any difficulty. Examination of the lower back reveals a small midline scar which is well healed indicating the site of previous surgery located over the L4–5, S1 area. There is no paravertebral muscle spasm in the lower back, however, range-of-motion is approximately 70 degrees ... flexion and extension and lateral bendings appear normal. There is no

point of tenderness. Range-of-motion of the hips, knees and ankles appears normal bilaterally. Deep tendon reflexes of both knees are present, symetric and appears normal, however, both ankle jerks are abolished. There is a slight weakness of the left extensor hallicus longus, but no sensory changes in the lower extremities.

> .     .     .     .     .

> I reviewed the x-ray of the lower back which was obtained today. There is moderate osteothoratic changes of the lower back and in addition there is some narrowing of L5–S1 indicating previous disc degeneration.

R. 145–146.

In April 1986, the plaintiff was evaluated by Kenneth Izzo, M.D. Dr. Izzo stated in his report:

> Examination of the neck revealed cervical range of motion to be normal. There is no parocervical tenderness to palpation noted.

> Examination of the back revealed a well healed laminectomy scar. There is no tenderness to palpation over the para-lumbar musculature at this time. Range-of-motion of the lumbar spine is 0 to 75 degrees in flexation and extension and 0 to 15 degrees in right and left lateral flexion. The straight-leg-raising tests are negative. The Patrick's test is negative. The deep tendon reflexes are distinctly asymmetrical.

> .     .     .     .     .

> The patient has no difficulty getting on and off the examination table. His gait is normal. He is able to walk adequately on his heels and toes.

R. 152.

At his October 22, 1986 hearing, Plaintiff testified he could walk 100 yards up hill and one-half of a mile on a level surface; he could stand up for four minutes before he was required to sit down; he could sit in an upright position without any back support for only three minutes before experiencing pain. Plaintiff suggested that he could work behind the counter at a 7–11 store but that his concentration would be

impeded by medication. Although he ordinarily only takes Aspirin or Tylenol, he sometimes takes Percodan when his pain becomes severe. He claims that he can "move mountains" after taking Percodan; however, he expressed concern about the addictive nature of the drug. Plaintiff does not wear a brace or use a cane to walk.

### III. *Discussion*

The standard of review to be applied in this case is whether there is substantial evidence in the record to support the Secretary's decision. 42 U.S.C. § 405(g); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir.1988). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). More than a mere scintilla of evidence is required to satisfy this standard of review; however, the evidence need not reach the level that is required to satisfy a "preponderance" standard. *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir.1988).

A Social Security claimant can qualify for disability benefits if he shows some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir.1987); 42 U.S.C. § 423(d)(1) (1982). If claimant suffers from a severe impairment not listed at 20 C.F.R. pt. 404, subpt. P., App. 1, but does show that his impairment is so severe that he is unable to return to his past relevant work, the burden shifts to the Secretary to "demonstrate that given the claimant's age, education, and work experience, the claimant is capable of performing substantial gainful work activity in the national economy." *Stunkard* 841 F.2d at 59.

■ In the instant case, the burden of proof shifted to the Secretary after the ALJ concluded that Plaintiff cannot perform his past relevant work. Subsequent to that determination, the ALJ concluded that Plaintiff was capable of performing substantial gainful work activity in the national economy. For the following reasons, I conclude that there is substantial evidence in the record to support the ALJ's final decision.

It is the Secretary's duty to make a final determination of disability when presented with conflicting medical evidence. *Richardson v. Perales*, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971); *Evosevich v. Consolidated Coal Co.*, 789 F.2d 1021, 1027–1028 (3rd Cir.1986). In the case at bar, the ALJ considered all of the conflicting medical evidence, as well as the evidence of subjective symptomatology, in reaching his decision.

■ The ALJ was not persuaded by the testimony of Dr. Eshleman, Plaintiff's treating physician, since Dr. Eshleman did not supply objective data to support his opinion that Plaintiff is unable to work. (R. 178). In contrast, Dr. Jaffari and Dr. Izzo supplied supporting evidence. I am mindful that the opinion of Plaintiff's treating physician is entitled to great weight; however, Dr. Eshleman's conclusion that Plaintiff is disabled "represents a legal conclusion" which he is not qualified to make. *Cullotta v. Bowen*, 662 F.Supp. 1161 (N.D.Ill.1987).

The ALJ also found that because of inconsistent evidence, Plaintiff's allegations of severe and disabling pain lasting from three days to six weeks were not fully credible. Although Plaintiff alleges that his pain renders him disabled, he walked into the offices of both Dr. Jaffari and Dr. Izzo with a normal gait and got on and off the examining table without difficulty. Plaintiff claimed, on three different occasions, to be experiencing back pain: (1) in his Disability Report (signed and dated 12/13/85); (2) in his Reconsideration Disability Report (signed and dated 2/19/86); and (3) in his Statement requesting a disability hearing (signed and dated 7/29/86). However, in April 1986 Dr. Izzo reported that "[Plaintiff] does not complain of any back pain at this time nor does he have any back pain when he has these episodes." R. 152.

Other evidence undercuts Plaintiff's credibility. For example, his lumbar flexion extension test results provided by both Dr. Jaffari and Dr. Izzo, R. 149, 152, conflict with Plaintiff's own testimony that he is unable to bend at the waist without support. It is well settled that credibility determinations are for the Secretary, not the courts to make. *Bloodsworth v. Heckler*, 703 F.2d 1233 (3d Cir.1983). I conclude that the ALJ's determination of credibility is supported by substantial evidence.

█ Plaintiff also objects to the hypothetical question posed to the vocational expert by the ALJ as requested by the Appeals Council. Plaintiff contends that this hypothetical question was defective since the information given to the expert did not include the fact—as alleged by Plaintiff—that his condition causes him to be nearly bedridden for extended periods of time. I disagree. A hypothetical question need only reflect each of a claimant's impairments that are supported by objective medical findings in the record. *Chrupcala v. Heckler*, 829 F.2d 1269 (3d Cir.1987). Plaintiff's allegation of episodic pain lasting from three days to six weeks, however, is not supported by objective evidence.[1] Accordingly, the hypothetical question posed to the vocational expert was not defective.

Finally, Plaintiff contends that the ALJ had no basis for finding that certain jobs, listed by the vocational expert as those which Plaintiff can perform, exist in "significant numbers." Plaintiff misreads the ALJ's opinion, however. The list includes *examples* of jobs that can be performed by Plaintiff. The ALJ accepted them as such, noting, however, "a 'significant' number of jobs in the national economy that the claimant has been capable of performing...."

I conclude that the decision of the Secretary is supported by substantial evidence in the record. Therefore, Plaintiff's motion for summary judgment will be denied, and

defendant's motion for summary judgment will be granted.

---

1. In fact, Plaintiff's treating physician described Plaintiff's pain in a manner similar to how it was described in the hypothetical question. Dr.

Eshleman's report of 12/13/85 describes Plaintiff's pain as causing reduced ability to stand or sit for extended periods of time.