

Opinions of the United
States Court of Appeals
for the Third Circuit

9-27-2004

# Leech v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4778

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Leech v. Comm Social Security" (2004). *2004 Decisions.* Paper 326.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/326

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 03-4778

———

HARRY B. LEECH,

Appellant

v.

JO ANNE B. BARNHART, in her
official capacity as COMMISSIONER
OF THE SOCIAL SECURITY ADMINISTRATION

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 02-0126)
Honorable David Stewart Cercone, District Judge

———

Submitted under Third Circuit LAR 34.1(a)
September 24, 2004

BEFORE: MCKEE, ALDISERT, and GREENBERG, Circuit Judges

(Filed:  September 27, 2004)

———

OPINION OF THE COURT

———

GREENBERG, Circuit Judge.

This matter comes on before this court on appeal from an order entered November

5, 2003, affirming the Commissioner of Social Security's denial of appellant Harry B.

Leech's ("Leech") request for benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-33. The district court had jurisdiction pursuant to 42 U.S.C. § 405(g) and we have jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons set forth below, we will reverse the district court's order affirming the Commissioner's decision and instruct the district court to remand the case to the Commissioner for further proceedings.

## I. PROCEDURAL HISTORY AND BACKGROUND

A. <u>Procedural History</u>

On July 12, 1999, Leech applied for disability insurance benefits ("DIB"), alleging disability since June 9, 1999, due to heart damage, brain injury, and memory loss. Leech later amended the onset date to March 13, 1997. Because he last was insured on December 31, 1998, he needed to show disability on or before that date.[1] 42 U.S.C. § 423(a), (c). The Commissioner denied his claim initially and upon reconsideration. At an administrative hearing before Administrative Law Judge ("ALJ") James Bukes, held on June 16, 2000, at which an attorney represented Leech, Leech and vocational expert Dr.

---

[1]The Commissioner in her brief indicates that the alleged onset date of disability was March 13, 1997, <u>see</u> appellee's br. at 5, but Leech indicates that the date was March 31, 1996, <u>see</u> appellant's br. at 12. The parties agree, however, that Leech last was insured on December 31, 1998. If the onset date is material the matter may be explored on remand.

William Reed testified.[2]

On November 24, 2000, the ALJ concluded that although Leech was unable to perform his past relevant work he was not disabled as he could perform a significant number of specific semi-skilled and skilled sedentary jobs. The Appeals Council denied Leech's request for review, and thus the ALJ's decision became final. Leech then filed a complaint in the district court which affirmed the Commissioner's decision on November 5, 2003, following which Leech filed this appeal.

B. Factual Background

Leech was born on December 4, 1938, and was 60 years old when he last qualified for DIB. He attended college and earned a Master's Degree in American history. Leech worked as a parole officer from 1970 until July 1993. He then had two delivery jobs, but ultimately stopped working in September 1994.

1. Cardiac Surgery - April 1991

Leech had coronary bypass surgery in April 1991 due to anterior wall myocardial infarction and congestive heart failure but he returned to work one month later. After completing outpatient rehabilitation, he exercised to 12.1 METS, his functional capacity was good, and he did not suffer from arrhythmia or ischemia.

---

[2]In his brief, Leech refers to prior testimony from VE Dr. Fred Morocco, on November 1, 1995, at a hearing before ALJ Barbara Gunning. ALJ Gunning denied Leech's disability claim on March 8, 1996.

2. <u>Car Accident - February 1993</u>

Following an automobile accident in February 1993, Leech was hospitalized for chest tightness and dizziness. His chemistry profile was normal, except for high cholesterol and triglyceride and his cardiac enzymes were negative. His brain CT scan was normal. His discomfort was characterized as "atypical." Upon discharge, a stress test showed "[e]xcellent" functional capacity, with a performance at 15.1 METS. Tr. 246. Leech then returned to work.

In July 1993, he was hospitalized for chest discomfort after being stopped for drunk driving. A cardiac catheterization showed "[m]ild" left ventricular dysfunction. Tr. 286. His symptoms were found to be non-cardiac in origin. He was discharged without physical restrictions other than to cease smoking and drinking alcohol.

3. <u>Cognitive Testing</u>

In February 1993, Leech was tested by reason of his memory loss and headaches. His brain CT scan was normal. In August 1993, Dr. Lee J. Barolo's psychological evaluation of Leech showed average intellectual functioning on the Wechsler Adult Intelligence Scale-Revised ("WAIS-R") but other tests indicated possible cognitive decline. In December 1993, Dr. Ravi Kant of the Allegheny Neuropsychiatric Institute noted personality change, cognitive difficulty, attention deficits, inflexibility, and short-term memory problems. These symptoms constituted "mild" traumatic brain injury. He

4

noted that most patients recovered fully, with rapid improvement in six months.

Neurologic specialist, Dr. Guy Costello, noted that medication improved Leech's headaches. He found normal judgment and intact cranial nerves and neurologic exams. By February 1994 Leech had improved. In particular, he did not have sleep or appetite problems but did have increased motivation and energy and kept busy. By March 1994, Leech reported doing "significantly better." Tr. 361.

4. Dr. Smith-Seemiller

In June 1994, Dr. Laura Smith-Seemiller of the Allegheny Neuropsychiatric Institute found gains in Leech's oral word fluency, sequence and memory functioning. She taught Leech cognitive strategies involving checklists and self-instructional clues which Leech found "beneficial." Dr. Smith-Seemiller concluded that Leech had "experienc[ed] significant cognitive impairment," with patterns of difficulty similar to those found in August 1993. Tr. 481, 484.

She elaborated in a letter to Leech's attorney, noting Leech's problems in learning, memory, information processing speed, and visual spacial memory. She opined that Leech would have difficulty in social situations, evaluating a client's situation, and making appropriate decisions. She noted that he tended to be forgetful and needed to refer back to his notes. She doubted that he could put facts together to make appropriate decisions and file reports in a timely manner. She also had concerns about his capacity to

5

interpret complex situations necessary to counsel parolees accurately. She concluded that "although Mr. Leech's deficits are mild, I see them as having a significant effect on his ability to perform job related duties." Tr. 489.

In January 1995, Leech indicated that his progress had "plateaued," but that, despite residual deficits, he was "satisfied." Tr. 348. He felt "much better" in October 1995 and his mood was stable, his sleep and appetite were good, and he remained busy. He benefitted from Ritalin. In December 1995, he reported reading often to maintain his skills. He was sometimes irritable, but better at "catching himself" before acting inappropriately.

### 5. Cardiac Progress

In March 1996, Leech tested negative for ischemia. His pressure response to exercise was normal and provoked no chest discomfort. His exercise capacity was "excellent." Tr. 904.

### 6. Dr. Kant's State Agency Evaluation

From March 13, 1997, to December 31, 1998, Leech saw Dr. Kant every two to three months. On July 22, 1997, Dr. Kant completed a form for the State Agency rating Leech's functions. He described most of Leech's activities of daily living and social functioning as "good." However, he rated Leech as "fair" in the following categories: concentration and task persistence; ability to perform within a schedule; ability to attend

6

to a task from the beginning to the end; ability to sustain a routine; ability to perform at a consistent pace; ability to adapt to changes; and ability to react to deadlines or schedules. He found that Leech was unable to perform his former work both at the onset of his disability and on his date last insured. He also found that Leech could not (1) counsel parolees or others in a social service setting; (2) compile, analyze, or report information in an accurate and timely fashion; (3) react appropriately to provocative behavior; or (4) make quick decisions when recalling pertinent facts was required. Dr. Kant gave Leech "severe" or worse ratings in a number of areas affecting his "occupational adjustments, performance adjustments and personal/social adjustments." Tr. 992-94. In June 2000, Dr. Kant explained that a rating of "fair" meant Leech could function only in "certain situations" with "serious limitations" and could not "sustain it." Tr. 990.

7. Consultative Examination

In March 1997, Consultative Examiner, Dr. Macy Levine, evaluated Leech. Leech reported to Dr. Levine that he had irregular chest tightness, but did not report palpitations. He said that Nitroglycerin helped, and that he was able to play golf and tennis. With regard to cognitive function, Leech reported short-term memory problems. He did not mention the effect of Dr. Smith-Seemiller's cognitive strategies.

Dr. Levine diagnosed coronary artery disease with chest pain, probable early chronic obstructive pulmonary disease, post traumatic headaches with memory loss, and

7

depression. Dr. Levine concluded that Leech could do a wide range of sedentary and light work, with the need to avoid stress, involving standing/walking less than two hours in an eight-hour workday and that he had no limitation in lifting, carrying, pushing, pulling, sitting, or doing postural and physical functions. Dr. Levine also found that "[i]n addition he may have a significant depression that interferes with his ability to function in various capacities." Tr. 819.

8. <u>1999 Hospitalization</u>

In June 1999, Leech was hospitalized for an acute cerebral infarction. He was confused, disoriented, and garbling his speech and his brain CT scan was consistent with a right hemispheric cerebrovascular accident. He later was discharged in stable condition, with instructions to perform activities as tolerated. He began speech therapy, and made measurable progress.

9. <u>Dr. Ott</u>

Beginning in June 1998, Leech saw Dr. Tim Ott as his general practitioner, primarily for his heart condition. In May 2000, Dr. Ott completed physical and mental evaluations for Leech limiting his physical capacity assessment to the relevant period. Dr. Ott determined that Leech could work where he primarily sat and occasionally lifted or carried up to 19 pounds.

Dr. Ott did not limit his mental capacity assessment analysis to the period before

December 31, 1998, and the capacity form did not instruct him to do so. He found that Leech currently had marked difficulty asking simple questions, requesting assistance, being aware of normal hazards, traveling in unfamiliar places, and using public transportation. He found moderate limitations in Leech's understanding, memory, sustained concentration and persistence, social interaction, and adaption abilities.

### 10. Vocational Evidence

VE Dr. William Reed testified that Leech's work as a parole officer was semi-skilled to skilled, was transferable with "very little occupational adjustment," and was "highly marketable." Tr. 60. At the ALJ's request, he considered a hypothetical person with Leech's skills who worked primarily sitting with less than two hours of standing and walking in an eight-hour workday. Dr. Reed testified that there are a significant number of sedentary jobs existing in the national economy that this individual could do, including residence supervisor and caseworker. He testified that he could do these jobs despite a "mild" deficit in making decisions, compiling information, preparing timely reports, and reacting to a counseling situation. Tr. 66-67. Upon further questioning by Leech's representative, when Dr. Reed assumed that this individual needed to be in a position of low stress with minimal dealing with the general public, no confrontation, and no production pace, he testified that the residency supervisor/caseworker job, as well as all other skilled work, would be precluded.

9

11.  The ALJ's Decision

The ALJ made contradictory findings in this case.  On the one hand, he found that "[t]he claimant would be limited to sedentary <u>unskilled</u> jobs."  Tr. 24-25 (emphasis added).  This finding would mean that Leech could not return to his former parole officer job, which was "<u>skilled</u> and light in exertional requirements."  Tr. 24-25 (emphasis added).  On the other hand, the ALJ found that "[t]he claimant has <u>transferable skills</u> from skilled work previously performed" (emphasis added) and that, as a result, he could do <u>skilled</u> sedentary work as, for example, a residency supervisor or caseworker.  Tr. 24-26.

A second contradiction in the ALJ's decision is that he found that Leech "must avoid stress," as Consultative Examiner Dr. Levine instructed.  Tr. 25.  Nonetheless, the ALJ determined that Leech could perform a residency supervisor or caseworker job, which VE Reed testified would be precluded due to stress.  Tr. 26.

Despite these inconsistencies, the ALJ concluded that Leech was not disabled within the relevant period.[3]

## II.  DISCUSSION

A.  Standard of Review

We exercise plenary review over the order of the district court, see Knepp v.

---

[3]He did find that Leech became disabled on June 9, 1999, following his cerebrovascular infarction.  Tr. 22.

Apfel, 204 F.3d 78, 83 (3d Cir. 2000), but review the decision of the Commissioner to determine whether it is supported by substantial evidence. See Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420, 1422 (1971). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 401, 91 S.Ct. at 1427 (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)). It is more than a mere scintilla of evidence but may be less than a preponderance. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). We exercise plenary review over questions of law. See Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).

B. Statutory and Regulatory Framework

In order to establish a disability under the Social Security Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." Stunkard v. Secretary of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988) (quoting Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987)); 42 U.S.C. § 423(d)(1)(A). A claimant is considered unable to engage in any substantial gainful activity "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

11

which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

The SSA has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.  See 20 C.F.R. § 404.1520; Williams v. Sullivan, 970 F.2d 1178, 1180 (3d Cir. 1992).  The first two steps involve threshold determinations.  In step one, the Commissioner must determine whether the claimant currently is engaging in substantial gainful activity.  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000).  If a claimant is found to be engaged in substantial gainful activity, the disability claim will be denied.  Id.  In step two, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments.  See id.  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  See id.  In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work.  Id.  If the impairment is equivalent to a listed impairment the disability claim is granted without further analysis.  If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.  Id.  Step four requires the Commissioner to consider whether the claimant retains the residual functional capacity to perform his past relevant work.  Id.  The claimant bears the burden of demonstrating an inability to return to his past relevant work.  Id.  If the claimant does not meet the burden

12

the claim is denied.

If the claimant is unable to resume his former occupation, the evaluation moves to the final step. Id. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. Id. The Commissioner must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. Id. At that point an analysis is made of the cumulative effect of all the claimant's impairments in a determination of whether he is capable of performing work and is not disabled. Id. at 118-19.

C. The ALJ's Decision is Inadequate

The district court stated that it was "troubled by the inconsistencies in the ALJ's opinion," but that "reading the entirety of the opinion, and the record as a whole," it was convinced that the ALJ's conclusion should be affirmed. Tr. 13. It dismissed the ALJ's errors as mere deficiencies in opinion writing and found that there was substantial evidence to support the ALJ's conclusion. Tr. 13.

We, however, find that the major defects in the administrative opinion are significant and compel that further proceedings be held before the ALJ. As described above, the ALJ found that Leech could only do unskilled work, but later concluded that

13

he could do skilled work as a residency supervisor or caseworker.[4] He also found that Leech must avoid stress but seemed not to consider Dr. Reed's testimony that a person who needed to avoid stress could not do work as a residency supervisor or caseworker. For these reasons, we must remand the case for clarification.

This result is further compelled by the fact that there is substantial evidence in the record that Leech's cognitive difficulties well may have rendered him disabled. His treating physician, Dr. Kant, concluded that throughout the relevant period, Leech was unable to perform his former work. Specifically, Dr. Kant determined that he could not (1) counsel parolees or others in a social service setting; (2) compile, analyze, or report information in an accurate and timely fashion; (3) react appropriately to provocative behavior; or (4) make quick decisions when recalling pertinent facts was required. Tr. 990. Moreover, he rated as "fair" Leech's ability to concentrate; perform tasks; perform within a schedule; perform at a consistent pace; attend from start to finish; sustain a routine; and reach deadlines or schedules. Tr. 875. Dr. Kant explained that his description of "fair" meant Leech could do these things only in "certain situations" with "serious limitations" and could not "sustain it." Tr. 990.

Likewise, Leech's treating physician, Dr. Smith-Seemiller concluded that

---

[4]As the district court noted, if Leech were limited to unskilled sedentary work, then Medical-Vocational Rule 201.06 would direct a finding of disability. See 20 C.F.R. Part 404, Subpart P, Appendix II., Table 1.

14

"although Mr. Leech's deficits are mild, I see them as having a significant effect on his ability to perform job related duties." Tr. 489. She opined that Leech would have difficulty in social situations, in evaluating a client's situation, and in making appropriate decisions. She also found that he tended to be forgetful and needed to refer back to his notes. She doubted he could put facts together to make appropriate decisions and file reports in a timely manner. She also had concerns about his capacity to interpret complex situations necessary to counsel parolees accurately.[5]

It is also significant that in addition to concluding that Leech needed to avoid stress, Dr. Levine also stated that Leech "may have a significant depression that interferes with his ability to function in various capacities." Tr. 819.

In light of this substantial evidence in Leech's favor, we will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable.

## III. CONCLUSION

A district court, after reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) may affirm, modify, or reverse the Commissioner's decision with or without a remand to the Commissioner for a rehearing. Podedworny v. Harris, 745 F.2d 210, 221

---

[5]Dr. Ott made similar findings, but as the ALJ noted, his cognitive assessments were not limited to the relevant period.

(3d Cir. 1984). A court of appeals also retains this discretion and, in reversing or modifying the Commissioner's decision, may choose to remand the case to the Commissioner for a further hearing or simply direct the district court to award benefits. Id. The decision to direct the district court to award benefits should be made only when the administrative record of the case has been developed fully and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits. Id. at 221-22. Inasmuch as the ALJ in this case failed to make consistent findings and conclusions, but we are not prepared to hold that Leech necessarily is entitled to benefits, we will reverse the district court's order and remand the case to the district court for it to remand it to the Commissioner for further proceedings.