**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1245
_____

KEITH BRUNSON,
                    Appellant

v.

COMMISSIONER OF SOCIAL SECURITY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-15-cv-00034)
District Judge: Honorable Gerald A. McHugh
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 15, 2016
_____

Before: CHAGARES, GREENAWAY, JR., RESTREPO, *Circuit Judges*.

(Filed: July 31, 2017)
_____

OPINION[*]
_____

RESTREPO, *Circuit Judge.*

        Keith Brunson appeals from an order of the District Court adopting a Magistrate

Judge's recommendation to affirm the Commissioner of Social Security's denial of his

---

        [*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

application for disability insurance benefits under Title II of the Social Security Act. We will affirm.

## I.

As we write for the benefit of the parties, we set out only the facts necessary for the discussion that follows. In March 2006, Brunson injured his left shoulder while working as a trash collector. He initially received physical therapy, but discontinued it in August 2006. Brunson received no further formal treatment for almost two years. After working on modified duty post-injury, Brunson ultimately stopped working and sought treatment with Dr. Brian J. Sennett. Although Dr. Sennett recommended surgery, Brunson declined this option. Several years later Brunson injured his right shoulder. As before, he waited—this time for about six months—before he sought treatment.

In March 2012, Brunson applied for disability benefits. Shortly thereafter, Dr. Harris Ross, the Social Security Administration's evaluating physician, examined Brunson and completed a Medical Source Statement ("MSS") regarding his abilities. Dr. Ross concluded that Brunson was extremely limited in his ability to lift, stand, walk, and carry. However, Dr. Ross left blank the areas of the form for "supportive medical findings," only noting the date of the report. R. 234–35.[1] In Dr. Ross's full summary, he stated that although Brunson complained of pain and had limited range of motion in both shoulders, his reflexes were intact and his grip was normal.

---

[1] The appellate record includes both an appendix prepared for this Court and a reproduced record from the District Court. Following the convention of the parties, we cite to items in the initial appendix as "J.A." and to those in the reproduced record as "R."

2

Later, state agency medical consultant Dr. Sharon A. Wander reviewed Brunson's medical records and arrived at a different conclusion. In Dr. Wander's detailed report, she concluded that Brunson was able to engage in light work, with fewer restrictions on lifting and sitting than Dr. Ross suggested. After reviewing Dr. Ross's records, she determined that Dr. Ross "impose[d] greater restrictions than the physical examination and medical evidence support[ed]." J.A. 76. She noted that Dr. Ross's opinion "relie[d] heavily on the subjective report of symptoms and limitations provided by the individual," and Dr. Wander regarded Brunson's treatment decisions as contradicting his self-reporting about limitations. R. 78. Following these evaluations, Brunson's application was initially denied on June 8, 2012.

In August 2012, Brunson saw Dr. Sennett for his right shoulder injury. He received physical therapy for a period of time, and ultimately underwent arthroscopic surgery on his right shoulder in January 2013. After two post-operative appointments, Dr. Sennett indicated that Brunson was progressing well in his recovery, and recommended he begin physical therapy for his right shoulder. Brunson abruptly stopped attending after only two sessions, and the therapy program subsequently discharged him for noncompliance.

In June 2013, Dr. Sennett completed an MSS for each of Brunson's injuries. Dr. Sennett concluded that Brunson was extremely limited in lifting and carrying, and restricted in pushing, pulling, reaching, and his ability to hold certain postural positions. Where the forms asked Dr. Sennett to support his restrictions, he wrote only Brunson's diagnoses.

3

In July 2013, a hearing was held before an Administrative Law Judge ("ALJ"). At the hearing, both Brunson and a vocational expert testified. Brunson reported that, despite his injuries, he continued to volunteer with his children's track team, perform light housework, take his children to school, and attend church regularly. Then, the vocational expert testified that a person with Brunson's current level of function was capable of performing several light work positions—usher, school bus monitor, and children's attendant—available in substantial numbers in the national economy.

In August 2013, the ALJ issued her opinion.[2] She found that, although Brunson suffered from severe impairments that precluded his ability to return to his previous work, he retained the ability to engage in other work in the national economy, making him not disabled for purposes of the Social Security Act. The Appeals Council denied review, making this a final decision of the Commissioner. Brunson thereafter sought review in the Eastern District of Pennsylvania, where, after a Magistrate Judge recommended denying his request for review, the District Court affirmed. This timely appeal followed.

## II.[3]

---

[2] In issuing her opinion, the ALJ followed the five-step sequential process set forth in 20 C.F.R. § 416.920. The process requires an ALJ to decide whether an applicant (1) is engaged in "substantial gainful activity;" (2) suffers from a "severe medically determinable physical or mental impairment;" (3) suffers from "an impairment(s) that meets or equals one" listed in the regulation's appendix; (4) has a residual functional capacity ("RFC") allowing for performance of "past relevant work;" and (5) can "make an adjustment to other work." Id. § 416.920(4)(i)–(v).

[3] The District Court had jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). We have jurisdiction pursuant to 28 U.S.C. § 1291.

Although we exercise plenary review over an ALJ's determination of legal principles, *Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995), our review of the factual findings is for substantial evidence. 42 U.S.C. § 405(g); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted)). In determining whether substantial evidence exists, the reviewing court may not substitute its own judgment for that of the ALJ. *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002).

## III.

An individual who is disabled and meets income- and resource-based eligibility requirements is entitled to benefits under the Social Security Act. 42 U.S.C. § 1381a. To establish disability, the individual must show that "there is some 'medically determinable basis for an impairment that prevents him from engaging in any' substantial gainful activity 'for a . . . twelve-month period.'" *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 58 (3d Cir. 1988)); 42 U.S.C. § 423(d)(1). The impairment must be such that the individual is "not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The District Court affirmed the Magistrate Judge's recommendation to deny Brunson's request for review of the ALJ's denial of his application for benefits because

5

the ALJ accepted Dr. Wander's assessment of his physical capabilities and found that Brunson retained the residual functional capacity ("RFC") to engage in light work positions available in the national economy. On appeal, Brunson argues that this determination was not supported by substantial evidence. In particular, Brunson suggests that the ALJ inappropriately credited Dr. Wander's assessment over those of Drs. Sennett and Ross—both because Dr. Sennett treated him while Dr. Wander merely reviewed his records, and because of Brunson's view of their relative qualifications—and discounted his own testimony as to his pain and limitations. Neither argument is availing.

An ALJ may "weigh the [conflicting] medical evidence and draw [her] own inferences." *Brown v. Astrue*, 649 F.3d 193, 196–97 (3d. Cir. 2011) (quoting *Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 163 (3d Cir. 1986)). Additionally, an ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record. *See Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) (quoting 20 C.F.R. § 404.1527(d)(2)).[4] Here, the ALJ rejected Dr. Sennett's opinion in favor of Dr. Wander's because of the other evidence in the record. The ALJ noted that, although Dr. Sennett concluded Brunson was limited in his work abilities, his report lacked adequate support for this determination. The ALJ also found Dr. Sennett's conclusion conflicted with both Brunson's self-reported daily activities and Dr. Sennett's own positive reports after Brunson's surgery. As with Dr. Sennett, the ALJ found that

---

[4] The federal regulation addressing the weight of the treating source's medical opinion is now codified at 20 C.F.R. § 404.1527(c)(2), and it continues to provide that a treating physician's opinion is not given controlling weight when it is "inconsistent with the other substantial evidence in" the case record.

Dr. Ross's opinion was inconsistent with the record evidence. As support, she cited Dr. Ross's own findings that Brunson maintained normal grip strength and intact reflexes. Accordingly, the ALJ appropriately gave less weight to Drs. Ross and Sennett's opinions in determining Brunson's RFC.

As to Dr. Wander's qualifications, although the relevant regulation does contemplate consideration of a physician's specialty in determining the weight to accord to her opinion, specialty is just one factor to consider. *See* 20 C.F.R. § 404.1527(c). Contrary to Brunson's assertions, Dr. Wander—as a state agency medical consultant— was *per se* qualified to issue a medical opinion for the ALJ's consideration. 20 C.F.R. § 404.1527(e)(2)(i).[5] The ALJ relied upon the opinion of Dr. Wander because she regarded it—unlike the opinions of Drs. Ross and Sennett—as consistent with the medical evidence presented. *See Chandler*, 667 F.3d at 361–62 (affirming an ALJ decision relying upon a state agency medical consultant's opinion in the presence of conflicting evidence).

As to Brunson's argument that the ALJ improperly discounted his testimony, the ALJ's determination as to Brunson's credibility and consistency is supported by substantial evidence. *See Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). In considering Brunson's testimony as to his severe pain and physical limitations, the ALJ

---

[5] Similarly, this section has since been recodified without effecting our analysis. The section addressing evidence from Federal or State agency medical consultants now appears at 20 C.F.R. § 404.1527(e), with a textual reference to 20 C.F.R. § 404.1513a. 20 C.F.R. § 404.1513a(b)(1) specifically provides that "Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."

found his "credibility . . . to be undermined by his reliance on conservative treatment for his left shoulder, his post-surgical improvement of his right shoulder, a significant treatment gap, lack of consistent positive objective findings during the period at issue, and the presence of widely varied daily activities." R. 13–14. This explanation presents substantial evidence to support the finding that Brunson's testimony lacked credibility in light of the medical evidence. *See Plummer*, 186 F.3d at 429.

Similarly, substantial evidence supports the ALJ's ultimate determination that Brunson retained the RFC to engage in light work. The ALJ pointed to the medical evidence and Brunson's self-reported activities to demonstrate that he was capable of performing basic functions in his daily life comparable to those required by light work. *See Plummer*, 186 F.3d at 431–32. Further, based on the vocational expert's testimony, the ALJ reasonably concluded there were light work positions available to him in the national economy.

## IV.

Because the ALJ's decision is supported by substantial evidence, we will affirm the order of the District Court.