Calvin PURNELL, Plaintiff,

v.

Michael J. ASTRUE, Commissioner of Social Security, Defendant.

Civil Action No. 06–4168.

United States District Court, E.D. Pennsylvania.

Aug. 26, 2009.

Marjorie V. Shribman, Warminster, PA, for Plaintiff.

Nicholas R. Cerulli, U.S. Attorney's Office, Philadelphia, PA, for Defendant.

## MEMORANDUM

ROBERT F. KELLY, Senior District Judge.

Plaintiff, Calvin Purnell ("Purnell"), filed this action under 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). The parties filed cross-motions for summary judgment.[1] Thereafter, on October 15, 2007, the Honorable Bruce W. Kauffman, to whom this matter was originally assigned, referred the case to United States Magistrate Judge Arnold C. Rapoport for a Report and Recommendation ("R & R"). The Magistrate Judge filed an R & R on February 14, 2008.[2] Subsequently, on July 15, 2009, this case was reassigned from Judge Kauffman to me. For the reasons explained below, I will adopt the R & R in part and deny it in part, and grant summary judgment in favor of the Commissioner.

## I. BACKGROUND

Purnell is a forty-one (41) year-old male born on September 28, 1964. (Tr. 50). He has a general equivalency diploma ("GED"), and has no relevant past work experience. (Tr. 186). Purnell alleges disability as of January 14, 1999 due to hear-

---

1. Purnell filed his Motion on January 22, 2007, and the Commissioner filed her Motion on February 16, 2007.

2. Objections were filed to the R & R by the Commissioner on February 26, 2008.

ing loss, diabetes, arm and neck pain, and depression. (Tr. 189–190).

Purnell's application for benefits was denied initially, and he then requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was commenced on November 10, 2004, at which Purnell, represented by counsel, testified, along with a witness on his behalf, and a vocational expert ("VE"). (Tr. 180–203). In a decision dated December 23, 2004, the ALJ determined that Purnell "has a severe bilateral ankle disorder, a severe cervical spine disorder, severe insulin-dependent diabetes mellitus, and severe depression." (Tr. 21). The ALJ, however, found that Purnell retained the residual functional capacity to "perform a restricted range of light work" (Tr. 22). Purnell was, thus, determined to be not disabled and not entitled to benefits under the Act. The ALJ's findings became the final decision of the Commissioner when the Appeals Council denied Purnell's request for review on July 13, 2006. (Tr. 6–8). Purnell then appealed the final decision to this Court on September 18, 2006.

## II. STANDARD OF REVIEW

■ The role of this Court, on judicial review, is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). "Substantial evidence" is not "a large or significant amount of evidence but rather such relevant evidence as a reasonable mind might accept to support a conclusion." *Id.* at 564–65, 108 S.Ct. 2541. "The Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record." *Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir.1999).

■ To establish a disability under the Social Security Act, a claimant must dem-onstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Sec'y of Health and Human Servs.,* 841 F.2d 57 (3d Cir.1988), *quoting Kangas v. Bowen,* 823 F.2d 775, 777 (3d Cir.1987); 42 U.S.C. § 423(d)(1) (1982). A claimant can establish such a disability in either of two ways: (1) by producing medical evidence that one is disabled per se as a result of meeting or equaling certain listed impairments set forth in 20 C.F.R. Regulation No. 4, Subpart P, Appendix 1 (1987); *see Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983); *Stunkard,* 841 F.2d at 59; *Kangas,* 823 F.2d at 777; or (2) by demonstrating an impairment of such severity as to be unable to engage in "any kind of substantial gainful work which exists in the national economy." *Heckler,* 461 U.S. at 461, 103 S.Ct. 1952; 42 U.S.C. § 423(d)(2)(A).

■ This method of proving disability requires that the claimant first show inability to return to former work due to a physical or mental impairment. Once a claimant has demonstrated inability to perform former work, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment claimant is able to perform, taking into consideration the claimant's physical ability, age, education and work experience. *See Kangas,* 823 F.2d at 777; *Rossi v. Califano,* 602 F.2d 55, 57 (3d Cir.1979); 42 U.S.C. § 423(d)(2)(A).

This case was decided under the medical-vocational regulations which require a five-step sequential evaluation of disability claims. *See Heckler,* 461 U.S. at 461, 103 S.Ct. 1952; *Santise v. Schweiker,* 676 F.2d 925 (3d Cir.1982). The sequential evaluation considers in turn current work activity, the severity of impairments, and the

ability to perform past work and vocational factors. 20 C.F.R. §§ 404.1520 and 416.920. In this case, the Commissioner reached the fifth step of the evaluation and determined that Purnell is capable of performing limited light work.

## III. THE REPORT AND RECOMMENDATION

■ In his R & R, Magistrate Judge Rapoport opined that the ALJ's decision was only partially supported by substantial evidence, and recommended that this matter be remanded back to the ALJ for further consideration. Magistrate Judge Rapoport first determined that Purnell's claim that he is suffering with a disabling mental impairment had no merit, and that the "ALJ's determination of Purnell's mental impairments was supported by substantial evidence." (R & R at 415). We agree with the Magistrate Judge's rationale with regard to this issue, and we need not discuss it further.

■ Purnell also argued that the "ALJ failed to properly credit his subjective complaints of pain, which were corroborated by Ms. Brittingham." [3] (R & R at 415). The Magistrate Judge noted that the ALJ found that, based on the evidence, the "statements of the claimant regarding the severity of his symptoms [4] and their impact on his ability to work are somewhat overstated and cannot be fully credited."

(*Id.*). The Magistrate Judge, however, found that the "ALJ's partial credibility determination was not supported by substantial evidence." (*Id.* at 416). He reasoned that the "radiology reports showed degenerative changes in both ankles, as well as multi-level spinal degenerative changes, including a disc herniation with moderate to severe stenosis at C5–6, and mild to moderate stenosis at two other levels," and that these "objectively determined impairments were enough to necessitate the use of prescribed narcotic pain medication." (*Id.*) The Magistrate Judge further stated that Purnell testified at the administrative hearing that he saw an orthopedic surgeon one week before the hearing for his spinal problems, and that that specialist told him that he "definitely needed surgery for his neck and back." (Tr. 193). Magistrate Judge Rapoport concluded that:

> In finding that Purnell's condition necessitated only 'conservative' rather than surgical treatment, the ALJ ignored this evidence without any explanation. In addition, Purnell testified that his pain prevents his ability to dress himself and care for his physical surroundings (R. 195), and the prescribed pain medication causes drowsiness (R. 191). As pain at the level described by the Plaintiff is consistent with the objective medical

---

**3.** Melissa Brittingham is plaintiff's fiancé, and Magistrate Judge Rapoport stated in his R & R that she corroborated his testimony at the administrative hearing. (R & R at 412).

**4.** Magistrate Judge Rapoport noted that Purnell testified at the administrative hearing concerning his pain as follows:

> At the ALJ's hearing, Purnell testified that he has left leg, arm, and left shoulder pain, and cannot sit for long periods due to hip pain. (R. 188–89.) Purnell, who lives with his mother, stated that he cannot dress or bathe himself on some days

and relies on the assistance of his fiancé for his personal care and to clean his room. (R. 189–91.) He reported sleep and appetite disturbances (R. 196.), difficulty hearing (R. 189–90.), and insulin dependency (R. 192.) He stated that he can walk only 1½ blocks at a time, can stand only 10 to 20 minutes at a time, and can lift 25 to 30 pounds with his right hand. (R. 191.) He testified that he is depressed, stays in his room, cries all of the time and does not want to be bothered by anyone. (R. 194.)

(R & R at 412).

findings of moderate to severe disc disease and the use of medication, I recommend that the ALJ's negative credibility determination as well as his RFC finding were not supported by substantial evidence.

(R & R at 416).

■ The Magistrate Judge went on to explain that "[W]hile I recognize that the issue of whether Purnell required surgery for his spine was raised for the first time at the hearing, there is no indication from the ALJ's opinion that he sought information from the new medical source, or otherwise fulfilled his obligation to investigate the extent of Purnell's symptoms." (R & R at 416). He concluded that the ALJ did not consider this evidence, and recommended that this matter be remanded to the Commissioner for further consideration as to the extent of Purnell's subjective complaints of pain.[5] I respectfully disagree with this determination.

## IV. DISCUSSION

■■ This Court is required to engage in a *de novo* review of those portions of the Magistrate Judge's R & R to which a claimant or the Commissioner has objected. *See* 28 U.S.C. § 636(b)(1)(C). The Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate." *Id.*; *see also Brophy v. Halter*, 153 F.Supp.2d 667, 669 (E.D.Pa.2001).

### A. Purnell's Testimony Regarding Surgery

In his decision, the ALJ correctly observed that "although [Purnell] has been diagnosed with a herniated disc, there is no documentation that he has been advised to undergo surgery." (Tr. 20). A review of the administrative record confirms such, and indicates that no doctor had opined that Purnell required surgery. The only reference to surgery in the record came for the first time at the administrative hearing when Purnell testified that a week before the hearing, he saw a new orthopedist named Henry Shark, who told him that he "definitely needed surgery on [his] neck and spine." (Tr. 193).

■ The Social Security Regulations provide a procedure whereby a claimant can seek remand based upon new evidence. Sentence six of Section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), provides that the court may remand for further proceedings where new and material evidence exists. However, a matter can only be remanded under this section upon a showing of "good cause" for not presenting this evidence to the ALJ. *Matthews v. Apfel*, 239 F.3d 589 (3d Cir.2001).[6]

■ Here, Purnell has not established that "new and material" evidence exists to justify a remand since he failed to provide any medical evidence at the hearing, or at any time subsequent to the hearing, to

---

**5.** Subjective evidence of pain and disability must be considered in determining if a claimant is disabled under the Act. *Smith v. Califano*, 637 F.2d 968 (3d Cir.1981).

**6.** To warrant a new evidence remand, a claimant must show:
1) the evidence is "new" and not merely cumulative of what is already in the record;
2) the evidence is "material", i.e., relative and probative, and there is a reason-

able possibility that the new evidence would have changed the outcome of the Secretary's determination;
3) the evidence must not concern a later-acquired disability or a subsequent deterioration of the previously non-disabling condition; and
4) there is "good cause" for not having included the new evidence in the record. *Szubak v. Sec'y of Health and Human Servs.*, 745 F.2d 831 (3d Cir.1984).

support his testimony that he was told by an orthopedist that he "definitely" needs surgery. In fact, as the Commissioner points out, Purnell, who was represented by counsel at all stages of his benefit application before Social Security and on appeal here, did not submit any medical documentation from a Dr. Shark, or any other examining or treating physician to support his claim that he required surgery. If such evidence exists, Purnell's counsel had numerous opportunities during the hearing and appeal processes to submit such information, but failed to do so. At the hearing, counsel did not request that the ALJ keep the administrative record open to submit additional evidence, and counsel did not submit any supporting evidence even after receiving the ALJ's decision, which stated that there was no documentation that Purnell required surgery. In addition, counsel failed to submit such evidence to the Appeals Council when review of the ALJ's decision was requested, and again when the instant summary judgment motion was filed. Thus, Purnell had five opportunities to produce such evidence from Dr. Shark or from any other physician who opined that he needed neck and back surgery, but failed to do so.[7]

▆▆ As noted above, it is the claimant's burden to establish disability under the Social Security Act. *Stunkard,* 841 F.2d at 57; 42 U.S.C. § 423(d)(1) (1982). Here, Purnell has not met that burden, and the ALJ has correctly determined that

there is no evidence in the record that demonstrates that he requires surgery.

▆▆ Moreover, I disagree with the Magistrate Judge's finding that the ALJ had a duty to develop the record concerning Purnell's alleged need for surgery. In support of this finding, Magistrate Judge Rapoport cites *Sims v. Apfel,* 530 U.S. 103, 111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000), for the proposition that "[i]t is the ALJ's duty to investigate the facts and develop the arguments for and against granting benefits." (R & R at 416). The Third Circuit, however, held in *Hess v. Sec'y of Health, Ed. and Welfare,* 497 F.2d 837, 840 (3d Cir.1974), that "We do not say that an administrative law judge must search out all the relevant evidence which might be available, since that would in effect shift the burden of proof to the government." *Id.* Here, as discussed above, it is apparent that Purnell had every opportunity to submit evidence concerning the issue of surgery, but failed to do so. Therefore, it cannot be said that the ALJ had a further duty to develop the record in this matter when Purnell had not met his own burden of proof with regard to this issue.[8]

**B. Purnell's Testimony Regarding Pain Medication**

Magistrate Judge Rapoport also found that the ALJ ignored Purnell's need for narcotic medication (Darvocet) in finding that Purnell's condition necessitated only

---

7. If such evidence exists, it is difficult to believe that counsel would have neglected to submit it at some stage of the proceedings in this matter.

8. It must also be noted that 20 C.F.R. § 404.1512(e) provides in part that:
 "We [Social Security Administration] will seek clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does

not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory techniques ..."
20 C.F.R. § 404.1512(e).
 However, in this case, Social Security had no duty under this regulation to seek clarification from Purnell's medical source concerning his requiring surgery since there are no reports from any doctor in the record discussing surgery on his back and neck.

conservative treatment. (R & R at 416). I, however, agree with the Commissioner's assertion that the use of a commonly prescribed pain medication, even a narcotic, does not remove Purnell's treatment from the realm of conservative treatment.

It must first be noted that Purnell does not offer any case support for such a conclusion, nor does the Magistrate Judge in his R & R. Rather, there is no evidence in the record that this medication caused any side effects which resulted in Purnell experiencing functional limitations. The only mention of side effects of medication in the record is where Purnell testified at the hearing that "I don't sit very long to read ... because I start to nod off because of the medication I take." (Tr. 191). Drowsiness, however, often accompanies the taking of medication, and it should not be viewed as disabling unless the record references serious functional limitations. *Burns v. Barnhart,* 312 F.3d 113, 131 (3d Cir.2002). Here, the record reflects that Purnell never reported drowsiness caused by any of his medications, nor did any physician observe any drowsiness or any other negative side effect(s) which caused him functional limitations. Thus, the ALJ properly observed that Purnell only required conservative treatment despite the use of a narcotic medication, and such a finding is supported by the record.

■■■■■ In conclusion, subjective complaints of pain do not require substantiation by clinical findings, but they must bear on the claimant's physical status, including adverse objective medical findings, diagnoses and opinions. *Baerga v. Richardson,* 500 F.2d 309 (3d Cir.1974); *Baith v. Weinberger,* 378 F.Supp. 596, 603 (E.D.Pa.1974); *see also* 20 C.F.R.

§§ 404.1526, 404.1529. The burden is with the claimant to satisfy the fact finder that the alleged pain is real and of disabling severity. *Bittel v. Richardson,* 441 F.2d 1193, 1195 (3d Cir.1971). In this case, the ALJ correctly determined that the medical evidence did not establish that Purnell suffers with pain that is of a disabling severity. Accordingly, I reject the Magistrate Judge's determination with regard to this issue, and grant summary judgment in favor of the Commissioner.

An appropriate Order follows.

## *ORDER*

**AND NOW,** this 26th day of August 2009, upon consideration of the Parties' cross-motions for summary judgment, United States Magistrate Judge Arnold C. Rapoport's Report and Recommendation, and Defendant's objections to the Report and Recommendation, it is hereby **ORDERED** that:

1. The Report and Recommendation is **NOT ADOPTED;**

2. Plaintiff's Motion for Summary Judgment (Doc. No. 7) is **DENIED;** and

3. Defendant's Motion for Summary Judgment (Doc. No. 8) is **GRANTED.**

CALVIN PURNELL,

Plaintiff

v.

MICHAEL J. ASTRUE [1],

COMMISSIONER OF THE

SOCIAL SECURITY ADMINISTRATION,

Defendant

---

**1.** On February 12, 2007, Michael J. Astrue became the Commissioner of the Social Security Administration and, therefore, he should be automatically substituted as the Defendant in this action. *See* Fed.R.Civ.P. 25(d)(1).

***REPORT AND RECOMMENDATION***

ARNOLD C. RAPOPORT, United States Magistrate Judge.

Plaintiff, Calvin Purnell, brings this action under 42 U.S.C. § 1383(c)(3), which incorporates 42 U.S.C. § 405(g) by reference, to review the final decision of the Commissioner of Social Security ("Commissioner"), denying his claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act ("the Act"). Subject matter jurisdiction is based upon section 205(g) of the Act. 42 U.S.C. § 405(g). For the reasons that follow, I recommend that the ALJ erred in rejecting certain medical evidence concerning Plaintiff's subjective complaints of pain and in determining Purnell's residual functional capacity.

**I. *FACTS AND PROCEDURAL HISTORY*[2]**

Purnell filed his application for benefits on December 5, 2003. (R. 50.) His claim was denied through the administrative appeals (R. 28–31), and a hearing was held before an Administrative Law Judge ("ALJ") on November 10, 2004. (R. 180–203.) The ALJ issued a decision on December 23, 2004, denying the claim at the final step of the five-step sequential evaluation process, finding that Purnell retained the residual function capacity ("RFC") to perform a limited range of light work activity. (R. 21.) The Appeals Council affirmed this decision on July 21, 2006 (R. 6–8), and Purnell filed this action for review on September 18, 2006. He argues that the ALJ's decision on the severity of his depressive disorder, the partial negative credibility finding on Purnell's subjective complaints of pain, and the determination

of Purnell's RFC, were not supported by substantial evidence.

Purnell was 36 years of age at the time of the ALJ hearing. (R. 50.) He has a general equivalency degree. (R. 186.) He alleges disability due to hearing loss, diabetes, neck and arm pain, and depression. He has no past relevant work history. (R. 201.) Thus, at step one, the ALJ determined that he is not engaging in substantial gainful activity. (R. 17.) At step two, the ALJ determined that Purnell's bilateral ankle disorder, cervical spine disorder, Type I diabetes, and depression were all "severe" impairments. (R. 17.) He found that Purnell's abscesses, ear infections, asthma, hepatitis A, hearing loss, and shoulder pain were not severe impairments. (*Id.*) At step three, the ALJ concluded that none of the severe impairments met or equaled the Commissioner's Listing of Impairments, thus he went on to determine Purnell's RFC based on the medical record. (R. 18–21.)

Reviewing the medical record, the ALJ noted that in December 2003, Purnell was diagnosed with bilateral ankle degenerative disease. (R. 18, 85–86.) The record indicates that he was directed to limit his walking, stair climbing, and recreational activities. (R. 80.) He was prescribed twice weekly physical therapy for two weeks. (*Id.*) In January 2004, he was diagnosed with multi-level spinal degenerative changes, with a left-sided disc herniation at C5–6 accompanied by moderate to severe stenosis with abnormal cord signal in the left lateral aspect of the cord, mild stenosis at C3–4, moderate stenosis at C4–5, and multi-level neural foraminal stenosis from C3–4 to C5–6. (R. 19, 82.) In January 2004, Purnell was examined by Dr. Ira Rubenfeld for the Pennsylvania state agency based on complaints of hearing

**2.** The Commissioner substantially agrees with Purnell's statement of the facts, with the sole exception of facts relating to his onset date. (Def. Br. at 1.)

loss, arthritis, asthma and diabetes. (R. 95.) Dr. Rubenfeld noted past cocaine use, and symptoms of asthma, shortness of breath, arthritis and depression. (R. 96.) He found that Purnell's lower extremities were "entirely within normal limits," he had a normal range of motion, gait and station, and his neurology as well as his hearing aid assisted hearing were unremarkable. (R. 97.) Dr. Rubenfeld found no limitations on standing and walking, sitting, pushing and pulling, postural activities or other physical functions, but found environmental limitations that Purnell should not be exposed to poor ventilation, moving machinery, extremes of temperature, and chemicals. (R. 101–102.) The medical record also shows that Purnell was treated at the emergency room in May 2004 for low back pain and in June 2004 for a diabetic episode. (R. 140–160.)

Purnell underwent a psycho-social assessment at Northwestern Human Services on September 30, 2004. (R. 161–174.) He was diagnosed with major depressive disorder, single episode, with psychotic features and cocaine dependency. His mood was depressed, his affect was blunt, auditory hallucinations were noted, but his thought content and thought process, speech, judgment, insight, concentration and memory were normal. (R. 166.) He had only mild disturbances of impulse control and frustration tolerance; moderate disturbances of flashback, appetite and sleep; but no disturbances of self-care skills or sexual function. (R. 167.) He had only mild to moderate psycho-societal stressors, one historical suicide attempt but no current ideation, and no homicidal ideation. (*Id.*) He was diagnosed with major depressive disorder with psychotic features and a GAF score of 50. (R. 168.)

One month later, on October 21, 2004, Purnell was evaluated by a Northwestern psychiatrist, Dr. Nwe Oo. (R. 171–73.) Dr. Oo diagnosed major depressive disorder, recurrent, with psychotic features and a GAF score of 50. (R. 173.) He prescribed Lexapro and Risperdal and one-on-one psychotherapy. (*Id.*) There is nothing in the record to indicate whether Purnell ever engaged in psychotherapy. Other than his testimony at the hearing that he takes his prescribed medications, there is no evidence that he has received any subsequent treatment for his emotional problems.

At the ALJ's hearing, Purnell testified that he has left leg, arm, and left shoulder pain, and cannot sit for long periods due to hip pain. (R. 188–89.) Purnell, who lives with his mother, stated that he cannot dress or bathe himself on some days and relies on the assistance of his fiancé for his personal care and to clean his room. (R. 189–91.) He reported sleep and appetite disturbances (R. 196), difficulty hearing (R. 189–90), and insulin dependency (R. 192). He stated he can walk only 1½ blocks at a time, can stand only 10 to 20 minutes at a time, and can lift 25 to 30 pounds with his right hand. (R. 191.) He testified that he is depressed, stays in his room, cries all of the time and does not want to be bothered with anyone. (R. 194.) His fiancé, Melissa Brittingham, corroborated this testimony. (R. 196–200.)

Based on the medical record and this testimony, at step three the ALJ found that Purnell had the RFC to perform light work in simple routine jobs that permitted alternation between sitting and standing as needed, that could be performed by one with occasional cervical spine flexion or rotation. (R. 20–21.)

At step five,[3] the ALJ considered the testimony of a vocational expert ("VE")

3. As Purnell had no prior work history, at step four the ALJ determined he had no abili-

who opined that a person of Purnell's age, education and work background, who was capable of performing light work that permitted alternation between sitting and standing as needed, with occasional cervical spine flexion or rotation could perform jobs such as an inspector/examiner and as a lot attendant, all of which exist in substantial numbers in the regional and national economies. (R. 201–02.) If one were to add the limitation of hearing loss, the VE would eliminate the lot attendant work due to safety issues. (R. 202–03.) Finally, if Purnell's subjective complaints were credited, the VE opined that he would be unable to perform any work. (R. 203.)

## II. *LEGAL STANDARD*

■ The role of this Court on judicial review is to determine whether there is substantial evidence in the administrative record to support the Commissioner's final decision. Any findings of fact made by the Commissioner must be accepted as conclusive, provided that they are supported by substantial evidence. 42 U.S.C. § 405(g).

■ "Substantial evidence" is deemed to be such relevant evidence as a reasonable mind might accept as adequate to support a decision. *Richardson v. Perales*, 402 U.S. 389, 407, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). *See also Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir.1992). The ALJ must consider all relevant evidence in the record and provide some indication of the evidence he rejected and why he rejected it. *See Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir.1994); *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir.1981). When determining whether the ALJ's decision is supported by substantial evidence, the Court may

look to any evidence in the record, regardless of whether the ALJ cites to it in his decision. *Hook v. Bowen*, 677 F.Supp. 305, 306 (M.D.Pa.1988); *Esposito v. Apfel*, Civ. A. No. 99–771, 2000 WL 218119, at *6 (E.D.Pa. Feb. 24, 2000). Thus, the issue before this Court is whether the Commissioner's final decision of "not disabled" should be sustained as being supported by substantial evidence.

■ Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards in evaluating a claim of disability. *Coria v. Heckler*, 750 F.2d 245 (3d Cir.1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents [him] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. § 423(d)(1). Each case is evaluated by the Commissioner according to a five-step process:

The sequence is essentially as follows: (1) if the claimant is currently engaged in substantial gainful employment, she will be found not disabled; (2) if the claimant does not suffer from a "severe impairment," she will be found not disabled; (3) if a severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last continually for at least twelve months, then the claimant will be found disabled; (4) if the severe impairment does not meet prong (3), the Commissioner considers the claimant's residual functional capacity ("RFC") to determine whether she can perform work she has done in the past despite the severe impairment—if she can, she will be found not disabled; and (5) if the claimant cannot

ty to perform past work. (R. 21.)

perform her past work, the Commissioner will consider the claimant's RFC, age, education, and past work experience to determine whether she can perform other work which exists in the national economy. *See id.* § 404.1520(b)-(f). *Schaudeck v. Comm'r of Social Sec. Admin.,* 181 F.3d 429, 431–32 (3d Cir.1999).

## III. *Discussion.*

### A. *Mental impairments.*

 Purnell first argues that the ALJ's conclusions were not supported by substantial evidence because he failed to consider evidence from Northwestern Human Services and corroborating testimony of Purnell's mental impairments. I recommend that this argument has no merit.

4. I note that the Commissioner argues that Dr. Oo does not qualify as a treating source, whose opinion is entitled to controlling weight, *see* 20 C.F.R. § 416.927(d)(2), because he performed only one evaluation of the Plaintiff. (Def. Br. at 2.) I reject this contention. It is undisputed that Purnell consulted Dr. Oo for treatment. While the regulations recognize that, the longer a treating source has treated the claimant, "the more weight we will give to the source's medical opinion," 20 C.F.R. § 416.927(d)(2)(i), a treating source's status does not change merely because the duration of treatment was brief. Although this argument is raised here by the Commissioner, I note that the ALJ did properly consider Dr. Oo to be a treating source.

5. Under Listing 12.04, affective disorders are defined as:

Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:

The ALJ did, in fact, discuss the medical records from Northwestern and Dr. Oo, correctly summarizing that Purnell was diagnosed with major depressive disorder, first as a single episode and then recurrent, with psychotic features.[4] While the ALJ did not describe at length the details of the assessment, I recommend that this omission was harmless. The ALJ noted that the limitations found by Dr. Oo—only mild and moderate limitations in certain categories—do not meet Listing 12.04's requirements of marked restriction of activities of daily living, social functioning, or concentration, persistence, or pace; or repeated episodes of decompensation.[5]

 While Purnell is correct that the ALJ did not discuss Dr. Oo's finding that

a. Anhedonia or pervasive loss of interest in almost all activities; or

b. Appetite disturbance with change in weight; or

c. Sleep disturbance; or

d. Psychomotor agitation or retardation; or

e. Decreased energy; or

f. Feelings of guilt or worthlessness; or

g. Difficulty concentrating or thinking; or

h. Thoughts of suicide; or

I. Hallucinations, delusions or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:

a. Hyperactivity; or

b. Pressure of speech; or

c. Flight of ideas; or

d. Inflated self-esteem; or

e. Decreased need for sleep; or

f. Easy distractibility; or

g. Involvement in activities that have a high probability of painful consequences which are not recognized; or

h. Hallucinations, delusions or paranoid thinking;

Or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

his GAF score was 50, I recommend that this omission was also harmless. A GAF score, which ranges from zero to 90, is used by a clinician to encapsulate his judgment of a patient's then existing psychological, social, and occupational functioning. *Diagnosic and Statistical Manual of Mental Disorders* 32–34 (4th Ed.2000). As the Commissioner notes, the "GAF scale, which is described in the DSM–III–R (and the DSM–IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings." Revised Medical Criteria for Evaluating Mental Disorder and Traumatic Brain Injury, 65 Fed.Reg. 50,746, 50,764–65 (2000). Importantly, Purnell does not explain how Dr. Oo's GAF score determination would have itself satisfied the Listing's requirements given that Dr. Oo's determinations of Purnell's limitations were no greater than moderate in any category. Accordingly, I recommend that the ALJ's determination of Purnell's mental impairments was supported by substantial evidence.

**B. *Negative credibility determination.***

Purnell also argues that the ALJ failed to properly credit his subjective complaints of pain, which were supported by the objective medical findings and corroborated by Ms. Brittingham. Regarding Purnell's complaints of pain, the ALJ stated that, "[a]fter consideration of all of the evidence, I find that, based on the medical evidence and the criteria of Social Security Ruling 96–7p and 20 C.F.R. § 416.929, the statements of the claimant regarding the severity of his symptoms and their impact on his ability to work are somewhat overstated and cannot be fully credited." (R. 20.) The ALJ then went on to discuss the facts that Purnell has received nothing more than conservative treatment for his complaints of joint pain affecting his neck, shoulder, and ankles, has not been advised to undergo surgery for his disc herniation, had full strength in his extremities, and normal gait and station. While the finding of normal strength, gait and station are based on Dr. Rubenfeld's consultive testing and report, the ALJ's other findings are not supported by substantial evidence.

20 C.F.R. § 416.929 provides that:

In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective

And
 B. Resulting in at least two of the following:
 1. Marked restriction of activities of daily living; or
 2. Marked difficulties in maintaining social functioning; or
 3. Marked difficulties in maintaining concentration, persistence, or pace; or
 4. Repeated episodes of decompensation, each of extended duration;
Or
 C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or

signs currently attenuated by medication or psychosocial support, and one of the following:
 1. Repeated episodes of decompensation, each of extended duration; or
 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or ·
 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

medical evidence, and other evidence.... We will consider all of your statements about your symptoms, such as pain, and any description you, your treating source or nontreating source, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work (or, if you are a child, your functioning). However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

The ALJ's partial negative credibility determination was not supported by substantial evidence because Purnell's radiology reports showed degenerative changes in both ankles, as well as multi-level spinal degenerative changes, including a disc herniation with moderate to severe stenosis at C5–6, and mild to moderate stenosis at two other levels. There was undisputed evidence that these objectively determined impairments were severe enough to necessitate the use of prescribed narcotic pain medication. (R. 190–91.) Purnell testified that he saw an orthopedic surgeon one week before the ALJ's hearing for his

spinal problems. According to Purnell, the specialist told him he "definitely" needed surgery for his neck and back, but that cortico-steroid injections and therapy may be sufficient to help his shoulder. (R. 193.) In finding that Purnell's condition necessitated only "conservative" rather than surgical treatment, the ALJ ignored this evidence without any explanation.[6] In addition, Purnell testified that his pain prevents his ability to dress himself and care for his physical surroundings (R. 195), and the prescribed pain medication causes drowsiness (R. 191). As pain at the level described by the Plaintiff is consistent with the objective medical findings of moderate to severe disc disease and the use of narcotic medication, I recommend that the ALJ's negative credibility determination as well as his RFC finding were not supported by substantial evidence.

Because of the inquisitorial nature of Social Security proceedings, "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel,* 530 U.S. 103, 111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). While I recognize that the issue of whether Purnell required surgery for his spine was raised for the first time at the hearing, there is no indication from the ALJ's opinion that he sought information from the new medical source, or otherwise fulfilled his obligation to investigate the extent of Purnell's symptoms. Accordingly, because the ALJ did not consider this evidence, and given that the VE testified that if Purnell's subjective complaints of pain were fully credited by the ALJ the Plaintiff would be unable to per-

---

6. Because of the inquisitorial nature of Social Security proceedings, "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel,* 530 U.S. 103, 111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). While I recognize that the issue of whether Purnell re-

quired surgery for his spine was raised for the first time at the hearing, there is no indication from the ALJ's opinion that he sought information from the new medical source, or otherwise fulfilled his obligation to investigate the extent of Purnell's symptoms.

form substantial gainful activity, I recommend that the matter be remanded to the Commissioner for further consideration of the extent of Purnell's subjective complaints of pain.

Therefore, I make the following:

### RECOMMENDATION

AND NOW, this 14th day of February, 2008, it is RESPECTFULLY RECOMMENDED that the decision of the Commissioner of Social Security should be vacated and this matter should be remanded to the Commissioner for further consideration.